**DEDERICH CORPORATION, a Wisconsin corporation, Plaintiff–Appellant,**

v.

**EUROZYME S.N.C., a foreign partnership, Defendant–Appellee.**

No. 87–1838.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1987.

Decided Feb. 2, 1988.

Charles P. Graupner, Michael, Best & Friedrich, Milwaukee, Wis., for plaintiff-appellant.

Daniel W. Hildebrand, Ross & Stevens, S.C., Madison, Wis., for defendant-appellee.

Before BAUER, Chief Judge,
RIPPLE, Circuit Judge, and WILL,
Senior District Judge.[*]

BAUER, Chief Judge.

The appellant, Dederich Corporation, a Wisconsin corporation, manufactures and distributes products used in the cheese industry. It appeals from the district court's decision denying its motion for a preliminary injunction. Dederich sought to enjoin Eurozyme S.N.C. (Eurozyme), a French general partnership that manufactures bacteria cultures for the cheese industry, from terminating its exclusive distributorship agreement. We reverse the district court and remand the case for reconsideration in light of the Wisconsin Supreme Court's recent opinion in *Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis.2d 593, 407 N.W.2d 873 (1987).

The parties do not dispute the important facts in this case. Eurozyme and Dederich entered into a distributorship agreement on November 11, 1983 granting Dederich the exclusive right to promote and distribute Eurozyme's bacteria cultures in North America. The agreement was to remain in effect for five years, beginning January 1, 1984. Paragraph 16 of the agreement required Dederich to sell 25 million units a year and gave Eurozyme the right to terminate the agreement if Dederich failed to meet the quota. Dederich has failed to fulfill this quota. It sold approximately four million bacterial cultures in 1985 and approximately seven million in 1986.

Eurozyme never excused Dederich from the quota, nor did Eurozyme agree to modify the quota. On March 19, 1986, however, Eurozyme's attorney sent Dederich a telex congratulating Dederich for the size of its March order and for contributing to the success of Eurozyme's product. Nevertheless, on November 25, 1986, Eurozyme wrote Dederich a letter terminating the distributorship agreement effective December 31, 1986 because Dederich had failed to comply with the minimum sales quota. To comply with the notice requirements of the Wisconsin Fair Dealership Law (WFDL), Wis.Stat. ch. 135 (1985–86), and the distributorship agreement, Eurozyme sent a second letter to Dederich on January 22, 1987. This letter stated that Eurozyme would terminate the agreement on May 1, 1987 unless Dederich fulfilled its 1986 quota by ordering approximately 18 million units by March 31, 1987. Dederich has not met this demand and Eurozyme's termination became effective on May 1, 1987.

Before Eurozyme sent its second notice of termination, Dederich commenced this suit seeking $1 damages and an order enjoining Eurozyme from terminating the distributorship agreement. Dederich alleges that Eurozyme's termination violated the notice and good cause provisions of the WFDL, as well as various provisions of paragraph 16 of the contract.

In deciding not to issue injunctive relief, the district court properly relied on our opinion in *American Hospital Supply v. Hospital Products Limited*, 780 F.2d 589 (7th Cir.1985). The district court focused on the potential success of Dederich's WFDL claim. "To be successful on the merits of its WFDL claim, Dederich must prove, at the outset, that its relationship with Eurozyme under the distributorship agreement constituted a 'dealership.'" Under the Wisconsin statute, a dealership exists if there is an agreement between two or more persons in which there is a "community of interest" in the business of offering, selling or distributing goods or services. Wis.Stat. § 135.02(3) (1985–86); *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 300 N.W.2d 63, 70 (1981). The district court concluded that "there is only a small likelihood that Dederich will ultimately prevail" on the issue of whether a "community of interest" existed because Dederich failed to show that "a significant part of its business was attributable to Eurozyme products." Consequently, the district court denied Dederich's motion for injunctive relief. Dederich appeals, argu-

---

[*] The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

ing that the "percentage test" utilized by the district court in assessing the "community of interest" was an erroneous legal standard under the WFDL and Wisconsin law.

We will reverse a district court's denial of a preliminary injunction only if we find an abuse of discretion. *Chicago Bd. of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 735 (7th Cir.1987). In this instance, we find an abuse of discretion because the district court, by no fault of its own, applied an incorrect legal standard. *See Lawson Products, Inc., v. Avnet, Inc.*, 782 F.2d 1429, 1437 (7th Cir.1986) (quoting *Zepeda v. INS*, 753 F.2d 719, 724 (9th Cir. 1983)).

This is a diversity action. As both parties acknowledge, the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires that Wisconsin law govern this case. The district court attempted diligently to clarify the Wisconsin law interpreting "community of interest" under the WFDL. At the time of its decision, however, it lacked the aid of a clear Wisconsin Supreme Court precedent. Subsequent to the district court's decision, the Wisconsin Supreme Court in *Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis. 2d 593, 407 N.W.2d 873, 875 (1987), had the opportunity to address directly the question of what constitutes a "community of interest."

The court in *Ziegler* concluded "that the percentage test ... will not, in and of itself, necessarily suffice as a guidepost for determining the existence of a community of interest." 407 N.W.2d at 878. In place of relying solely on the percentage test, *Ziegler* requires lower courts to "examine a wide variety of facets, individually and in their totality, as evidenced in the actual dealings of the parties and in their contract or agreement." *Id.* at 879. The court listed at least 10 factual inquiries that a court must make to analyze whether a "community of interest" relationship exists. *Id.*

An examination of these factors on review would be inappropriate. We decline Eurozyme's invitation to engage in the type of detailed and exacting factfinding that is better performed by the district court. Before the district court can correctly rule on Dederich's likelihood of success under the WFDL, it must make the inquiries dictated by *Ziegler*. For these reasons, we vacate the district court's decision and remand for further proceedings in light of *Ziegler*.