**CLASSIC COMPONENTS SUPPLY, INC., Plaintiff–Appellant,**

v.

**MITSUBISHI ELECTRONICS AMERICA, INC., Defendant-Appellee.**

No. 88–1154.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 5, 1988.

Decided Feb. 25, 1988.

Michael A. Braun, Braun & Rivkin, Ltd., Chicago, Ill., Craig W. Nelson, Piette, Knoll & Nelson, S.C., Milwaukee, Wis., for plaintiff-appellant.

David V. Meany, Michael, Best & Friedrich, Milwaukee, Wis., for defendant-appellee.

Before BAUER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

We have a reflexive appeal and request for an injunction pending its resolution. Classic Components Supply filed suit in a Wisconsin court, seeking an injunction to compel Mitsubishi Electronics America to continue using Classic as a distributor. Mitsubishi removed the case to federal court under the diversity jurisdiction and pointed out that Classic had promised by contract to arbitrate disputes of this character. The district court ordered Classic to arbitrate and denied the request for a preliminary injunction, stating that even if Classic had demonstrated the prospect of irreparable injury it hadn't a chance on the merits. See *Dederich Corp. v. Eurozyme S.N.C.*, 839 F.2d 373 (7th Cir.1988). Classic immediately appealed and asked for an injunction pending appeal. Although this request has produced a stack of motions, affidavits, and other papers more than two inches thick, Classic has not satisfied any of the criteria for an injunction pending appeal, which its papers do not acknowledge. We therefore deny the application and order Classic to reimburse Mitsubishi for its outlays in replying to this pointless motion. Fed.R.App.P. 38.

One who seeks an injunction pending appeal must show irreparable injury. Classic's motions papers do not address this subject. The closest it comes is the statement that its

customers have already started to cancel their orders for Mitsubishi products. [Classic's] market development for Mitsubishi products will be totally lost if there is any significant interruption in its Dealership Agreement. This will effect [sic] not only the portion of [Classic's] business represented by the Mitsubishi line, but its entire customer base which Classic has traditionally serviced by holding itself out as a source for a broad range of its customers' needs.

All very well, but this shows only that Classic may suffer injury. Injuries of this sort, common consequences of broken contracts, yield damages. An injury compensable in money is not "irreparable", so an

injunction is unavailable. *Sampson v. Murray*, 415 U.S. 61, 88–91, 94 S.Ct. 937, 951–953, 39 L.Ed.2d 166 (1974). Classic does not acknowledge the existence, let alone the force, of this principle. Classic therefore has not appealed to the exception: that a terminated supply arrangement may create irreparable injury if the interruption bids fair to propel one firm into bankruptcy and frustrate later attempts to compute or collect damages. E.g., *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 596 (7th Cir.1986); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir.1984); *Signode Corp. v. Weld–Loc Systems, Inc.*, 700 F.2d 1108, 1111 (7th Cir.1983). Classic does not suggest that the injury it confronts is harder to quantify than the injury in any other contract case. Perhaps Classic abjured the exception because it offered no shelter. Classic distributes the lines of about 65 manufacturers; Mitsubishi's semiconductors accounted for only 1.5% of its sales in 1986 and 3.4% in early 1987; Classic can purchase Mitsubishi products (with Mitsubishi's blessing) from its distributors even if not directly from Mitsubishi.

Because Classic has not reached first base on irreparable injury, we do not consider whether it has a plausible legal claim or whether an injunction would injure Mitsubishi more than it would help Classic. The district court thought Classic a loser on the merits, and although Classic disagrees with that conclusion it does not argue that the district court's assessment was so gravely in error that an appellate court may disturb it. See *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433, 1436–40 (7th Cir.1986). Classic does not so much as refer to the standard of review on appeal.

Litigants should not lightly seek injunctions pending appeal. *Adams v. Walter*, 488 F.2d 1064, 1065 (7th Cir.1973) (a motion for injunction or stay pending appeal seeks an "extraordinary remedy"). Especially not when the seeker is trying to avoid a commitment to arbitrate, a commitment to use a forum other than the courts. *Graphic Communications Union v. Chicago Tribune Co.*, 779 F.2d 13 (7th Cir.1985). Certainly not when the argument invoked to escape arbitration—that by breaking the contract one's adversary waived the right to arbitrate—is one we have deemed frivolous. *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 692–93 (7th Cir.1987).

Federal courts employ elaborate, even ponderous procedures to resolve hard legal questions and knotty factual ones. The procedures ensure that those with serious disputes receive full and fair hearings. A request for emergency relief triggers accelerated and detailed scrutiny in this court. Procedures designed for hard, complex cases are necessarily costly, and when employed in simple or frivolous cases they are too costly. In such cases the cost of the legal process may be a form of punishment, the entitlement to impose it a crowbar for obtaining concessions that the merits of the case do not support. As an incident, the litigant diverts the time of judges away from serious cases, diminishing the quality of justice available for those with better claims to our time.

The American Rule on the allocation of legal fees—that each party bears its own costs—rests on the supposition that the litigants have substantial claims, that there is uncertainty about who is in the right. Yet "in a system requiring each party to bear its own costs and fees, courts will ensure that each party really *does* bear the costs and not foist expenses off on its adversaries." *In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir.1985). Cf. *Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, Inc.*, 814 F.2d 358, 373–74 (7th Cir.1987). Shallow claims may require costly replies. Classic's motions papers did not cite or discuss any of the relevant cases; Mitsubishi had to dig them up itself, incurring costs that the American Rule supposes fall on the movant. When a party files papers that can yield only one outcome, the time and money spent resisting the claim is wasted at best, a potential source of bargaining leverage for the movant at worst. The need to pay one's lawyer adds injury to the insult of the frivolous motion. The American Rule is

not supposed to enable a litigant to impose self-help penalties on its rival by filing pointless motions that are costly to defend. A moving party that bears its adversary's fees and costs will think twice about making motions, as it should; the party in the right will be relieved of the burden that should not have been created in the first place.

Classic's motion for an injunction pending appeal was foredoomed. It would be unjust to Mitsubishi to leave it saddled with the costs of responding to a motion that should not have been filed. Classic, not Mitsubishi, is the author of these costs and must bear them. Mitsubishi has fifteen days to file with the Clerk a statement of the fees and costs reasonably incurred in responding to the motion, which is

DENIED.