960 F.2d 640
 23 Fed.R.Serv.3d 1080, RICO Bus.Disp.Guide 7976
 William A. BRANDT, Jr., Plaintiff,
v.
SCHAL ASSOCIATES, INCORPORATED, a corporation, Richard C.
Halpren and Evans N. Spiloes, et al.,
Defendants-Appellees.
Appeal of David L. CAMPBELL, Attorney for Plaintiff.
 No. 90-2814.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 7, 1991.
Decided April 1, 1992.
 
 David L. Campbell, Campbell & Campbell, St. Louis, Mo., Joseph J. Banks, Oak Brook, Ill., William L. Kabaker, Fishman & Merrick, Chicago, Ill., for Brandt.
 Richard G. Schultz, Jeff D. Harris, argued, Kenneth W. Sullivan, Foran & Schultz, Chicago, Ill., for Schal Associates, Inc., Richard C. Halpren and Evans N. Spiloes.
 Martha P. Mandel, Northwestern University, Evanston, Ill., for Northwestern University.
 Roger Pascal, Michael L. Brody, James A. Clark, Schiff, Hardin & Waite, Chicago, Ill., for M.O.W. Const. Co.
 Joshua G. Vincent, argued, George W. Spellmire, Hinshaw & Culbertson, Chicago, Ill., for David L. Campbell.
 Before BAUER, Chief Judge, COFFEY, and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 A contract dispute between a commercial construction management firm, Schal Associates (Schal), and a hired contractor specializing in the design and installation of window-wall systems, Crescent Corporation, whose successor in interest is now William A. Brandt (Crescent), resulted in extensive litigation in both state and federal court. Crescent apparently met with some success with its state claims in state court but decided to press on in federal court charging that Schal violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). After several years of protracted attempts at filing and justifying the RICO lawsuit against Schal, Brandt finally accepted a voluntary dismissal of its second amended complaint. Schal then filed a motion for Rule 11 sanctions against Brandt's attorney, David Campbell. The district court concluded that Campbell concocted the RICO fraud theory with no evidentiary basis. After an extensive hearing the court awarded Rule 11 sanctions that amounted to the attorneys' fees and expenses the Schal defendants had incurred. Campbell appeals those sanctions. We affirm.
 
 I. Background
 
 2
 At the outset we should note that this case, described by the district court as a "massive contract-based dispute between a construction management firm and a contractor,"[1] has already consumed over 60 published pages in the Federal Reporter system, to say nothing of the orders not published and the volumes of motions and pleadings included in the record. We have no intention of duplicating what has already been detailed. Suffice it to say, this case is an unfortunate example of why "litigation" has taken on a bad name.
 
 
 3
 David L. Campbell, an attorney from St. Louis, Missouri, represented Crescent Corporation and later Crescent's successor in interest, William Brandt, Jr. (for consistency we will refer to the complainant as "Crescent"). In 1985, on behalf of Crescent, Campbell filed a RICO action in federal court against Schal Associates, a Chicago-based construction management firm, and its two top officers claiming damages in excess of $50 million. The RICO charge was the only federal claim. The complaint also included several counts of assorted state law claims for breach of contract, quantum meruit and fraud. The RICO count alleged that Schal, as general contractor for three commercial property developments in Chicago, Illinois, hired Crescent to design and install window-wall systems for the development projects. In that count, Brandt claims that Schal required Crescent to adopt costly modifications to original window specifications. These changes dramatically increased Crescent's completion cost thus reducing or eliminating any profits it was to receive under its signed contract with Schal.
 
 
 4
 Originally Crescent had three contracts with Schal for work to be performed on three construction projects managed by Schal which included work for Crescent valued at $4.885 million, $3.888 million, and $700,000.00. According to Brandt, Schal made an oral promise to reimburse Crescent for the extra work necessary to satisfy the modified specifications. Brandt claims that Schal never compensated Crescent for the extra-contractual work and expenses, and that Schal had no intention to make good on its oral promise and made such promise with the intent to defraud Crescent. In addition, Brandt claims that Crescent was subjected to fraudulent "backcharges"[2] imposed by Schal which reduced Crescent's anticipated revenue on the deal, further eroding Crescent's expected profits.
 
 
 5
 Schal has never denied that Crescent performed substantial extra-contractual work on the projects, and it admits to having stopped payments to Crescent at a time that its records showed that Crescent was entitled to about $250,000. But Schal has always maintained it stopped payments because it believed Crescent was at least partly responsible for serious leakage problems and water damage in the new buildings.
 
 
 6
 Over the four years of this RICO suit, Crescent filed a complaint, an amended complaint and a second amended complaint. The court dismissed the first amended complaint because it failed to allege the prohibited "pattern" of racketeering and fraudulent conduct necessary to support a RICO charge, 18 U.S.C. § 1962(a), and because the backcharges were not in furtherance of a fraudulent scheme even if Schal had asserted false grounds for imposing the backcharges. Brandt v. Schal Assoc., 121 F.R.D. 368, 372 (N.D.Ill.1988). The second amended complaint did not vary substantially from the first amended complaint. The second amendment merely attempted to clarify exactly how the backcharges were part of an overall fraud by Schal upon Crescent by suggesting that each false back-charge could be labelled a RICO predicate offense under a variety of theories. Id. The district court dismissed one of the original defendants in this case stating that the "allegations against it were a one-shot effort to inflict a single injury." Id. at 373. Seven months after filing the second amended complaint, Crescent moved to dismiss the suit because it was clear after considerable discovery that there was no evidence to support the theory that Schal's non-payment on the extra work Crescent was induced to perform was an effort by Schal to fraudulently extract non-contract work from Crescent without compensation. Subject to certain conditions, the court granted what amounted to a voluntary dismissal.
 
 Rule 11 Motion
 
 7
 After Crescent took its voluntary dismissal, Schal filed a motion for Rule 11 sanctions against Crescent's attorney, David L. Campbell. For the most part, Schal argued about the essential groundlessness of Crescent's pleadings. Campbell was the lead attorney in this suit since its inception. He also represented Brandt and Crescent in a parallel state court proceeding litigating some contract issues similar to those alleged in the federal case. Schal, in its Rule 11 motion, asserted that Campbell never had a reasonable basis in fact to allege fraud against Schal with respect to any project associated with Schal and that his allegations of predicate fraudulent acts in support of his RICO claim were not reasonably warranted in law. In addition, Campbell, despite the lack of facts and law to support his case, was in the practice of submitting voluminous briefs (sometimes exceeding 100 pages), thick memoranda in apparent support of various motions (often 70-80 pages), and large, tedious affidavits. It is easy to understand the district court's exasperation with Campbell's method of litigating, which the judge considered an abuse of process. The district judge repeatedly warned Campbell to refrain from making frivolous motions attached to book-sized memos but to no avail. Campbell responded to the Rule 11 motion with a "158-page (!) document entitled 'Campbell's Litigation Outline to detail its factual support for [its claim] on a line by line basis.' " 121 F.R.D. at 373-74. The district court noted that "such an approach to a Rule 11 motion [is] ... inappropriate." Id.
 
 
 8
 The district court held that Campbell had violated Rule 11 by filing the RICO claims. The court held: "There was unquestionably a serious leakage problem in the buildings, and Crescent was responsible for the design and installation of the water barrier system ... [Campbell] points to nothing suggesting that Schal's stated reason for stopping payments was a coverup for fraudulent intent." Id. at 380. Continuing, the court noted "what Campbell describes as a reasonable inference from the evidence is a mere breach of contract after the extra work had been done, rather than a fraudulent scheme from the inception to induce Crescent to perform work by promising to pay for it while intending never to do so." Id. at 381. Based on the foregoing, the district court concluded that Campbell "concocted the [fraud-based RICO] theory on his own, with no direct evidence from his client." Id. at 385. The court found Campbell liable under Rule 11 for having "concoct[ed] a claim in the absence of any evidence to support it." Id. at 389.
 
 
 9
 The district court determined that Campbell violated Rule 11 only after a very thorough analysis. The court concluded that since it had determined liability, it "must impose some sanction." Id. The court directed the parties to "provide supplemental materials as to the nature and amount of such sanctions" and stated "each side is entitled to argue for the sanction they or he feels appropriate...." Id. at 370, 389. The court gave the "preliminary view" that Schal would be entitled to recover their attorneys' fees and expenses which would not have been incurred " 'but for' Campbell's ill-conceived filing of this [RICO] action." Id. at 389. The court also indicated that Campbell should not be required to pay for fees and expenses relating to work which Schal would have undertaken to defend against the actions in the state courts.
 
 
 10
 After an extended hearing, on May 2, 1990, the court entered comprehensive Findings of Fact and Conclusions of Law (Brandt II, 131 F.R.D. 485) in which it imposed sanctions under Rule 11 against Campbell in the amount of $351,664.96, which equalled the total amount of "reasonable" attorneys' fees and expenses incurred by the Schal defendants as a direct result of Campbell's violations of Rule 11. In examining the reasonableness of the Schal defendants' fees, the district court divided the amounts requested into five categories (and numerous sub-categories): (1) General litigation services; (2) Fees related to discovery; (3) Fees related to appeal; (4) Fees related to Rule 11; and (5) Miscellaneous fees. After thoroughly examining the items under each category, he concluded that--with the exception of the amounts related to the appeal--the amounts claimed for fees and expenses were reasonable. These included (to the nearest dollar) $172,829.00 in legal fees defending the RICO case, $141,592.00 incurred under the Rule 11 motion, and $37,244.00 in expenses.
 
 
 11
 The district court initially excluded the fees Schal incurred in defending against Crescent's two consolidated appeals to the Seventh Circuit challenging the conditions of the voluntary dismissal as entered by the district court. The district court noted that one of the three issues on appeal related to the dismissal of Crescent's claim against Northwestern University, and Northwestern was not involved in the Rule 11 proceedings. The court had been led to believe, through a misrepresentation by Campbell's attorneys, that Schal's counsel had represented both Schal and Northwestern on the appeals. Therefore, the court concluded that there was no way to allocate the services rendered. 131 F.R.D. at 498. But Northwestern was represented by other counsel. This apparent misrepresentation prompted the suggestion of further sanctions leading to another round of briefing and additional hearings.
 
 
 12
 The May 2, 1990 decision also requested submissions on the question of the amount, if any, which should be added to the sanction due to the "delay factor," i.e., the delay sustained by Schal in obtaining the recovery of the reasonable expenses incurred in the RICO case. This question was briefed, and Campbell also requested a stay due to a personal bankruptcy he had filed in St. Louis on May 25, 1990. Schal subsequently obtained a modification of the bankruptcy stay to permit entry of a final judgment.
 
 
 13
 On June 26, 1990, Campbell requested a reconsideration of the entire sanction. Accordingly, on July 17, 1990, the court entered its final Memorandum Opinion and Order (Brandt III ), 131 F.R.D. 512 (N.D.Ill.1990), rejecting Campbell's request to reconsider and also denying Schal's renewed request to include their appeal fees in the sanction. The court entered judgment against Campbell in the amount of $443,564.66, which included the $351,664.96 previously ordered plus $84,388.60 interest for the "delay factor" and $7,511.10 added costs incurred due to the misstatement by Campbell's counsel regarding the appeals. 131 F.R.D. 512, 522. The court held sua sponte that this "outright and blatant misrepresentation constituted an independent violation of Rule 11." Id. at 518.
 
 II. Discussion
 A. Standard of Review
 
 14
 Campbell declined to appeal liability under Rule 11. We therefore consider only the purpose and the amount of the sanction. This court and the Supreme Court have recently emphasized that we will give deference to the district court when reviewing a Rule 11 decision. We thus review the imposition of a Rule 11 sanction under an abuse of discretion standard. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); Thompson v. Duke, 940 F.2d 192, 195 (7th Cir.1991); Mars Steel Corp. v. Continental Bank, 880 F.2d 928, 933 (7th Cir.1989) (en banc ). Decisions concerning the award of attorneys' fees as a Rule 11 sanction are "better left to the discretion of the district court who has a bird's eye view of the actual positions taken by the litigants." Flip Side Productions, Inc. v. Jam Productions, Ltd., 843 F.2d 1024, 1038 (7th Cir.), cert. denied, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). "In reviewing the imposition of sanctions under Rule 11, then, we will give deference to the decision of the district court, but with careful reference to the standards governing the exercise of the court's discretion and to the purpose Rule 11 is meant to serve." Kraemer v. Grant County, 892 F.2d 686, 689 (7th Cir.1990). In this case we will defer to the district court but will examine the court's reasoning to determine if its sanctions against Campbell were designed to serve the purpose of Rule 11.
 
 B. Purpose of Rule 11
 
 15
 Campbell argues that the district court in this case impermissibly used Rule 11 to shift the attorneys' fees to compensate the victor in a spurious lawsuit rather than as a sanction for attorney malfeasance. He claims that the court focused on compensation rather than the punitive purpose of deterrence as set out in Samuels v. Wilder, 906 F.2d 272, 276 (7th Cir.1990). Campbell is generally correct in observing that our case law has emphasized the punitive rather than compensatory nature of Rule 11 sanctions. In Pavelic & Le Flore v. Marvel Entertainment Group, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the Supreme Court stated that the purpose of Rule 11 "is not reimbursement but 'sanction'." Id. at 126. In Cooter & Gell, the Court noted that the goal of a Rule 11 sanction is specific and general deterrence. 110 S.Ct. at 2454, 2461. The Court added, however, that proper sanctions could include expenses directly caused by the filing of the lawsuit. Id. 110 S.Ct. at 2461.
 
 
 16
 [An appropriate] sanction, may, but need not, include payment of the other parties' expenses. Although the rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, any interpretation must give effect to the rule's central goal of deterrence.
 
 
 17
 Id. at 2454.
 
 
 18
 Thus deterrence may well include the payment of expenses and attorneys' fees generated as a result of the filing of abusive litigation. Case law acknowledges compensation as another important objective and purpose for Rule 11. "[O]ne of the goals of Rule 11 is to impose costs on the careless or reckless lawyers. Compensation is one thrust of Rule 11...." Brown v. Federation of State Medical Boards, 830 F.2d 1429, 1437 (7th Cir.1987). In our American system which requires each party to bear its own fees and costs, "courts will ensure that each party really does bear the costs and does not foist expenses off on its adversaries." In re TCI, Ltd., 769 F.2d 441 (7th Cir.1985). See also Thornton v. Wahl, 787 F.2d 1151, 1154 (7th Cir.), cert. denied, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986) ("Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under [Rule 11.]").
 
 
 19
 Compensation and deterrence are not only not mutually exclusive, they are sometimes compatible. If compensation was not a recognizable basis for Rule 11 awards, aggrieved litigants would have little incentive to pursue sanctions thus diminishing the important deterrent effect of Rule 11. Moreover, our reading of Rule 11 clearly permits the court to award attorneys' fees to a party aggrieved by a lawyer whose "motion, pleading or other paper" filed with the court is not the product of "reasonable inquiry," "well grounded in fact and ... warranted by existing law ... or interposed for improper purpose such as to harass ... or needlessly increase the cost of litigation." Fed.R.Civ.P. 11 (emphasis added).
 
 
 20
 If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper including a reasonable attorney's fee.
 
 
 21
 Fed.R.Civ.P. 11, amended April 28, 1987, eff. August 1, 1983 (emphasis added). The plain language of Rule 11 suggests that attorneys' fees are a valid base for applicable sanctions to which other reasonable expenses may be added. When defending a spurious lawsuit attorneys' fees are an inevitable ingredient in the expenses incurred, and they represent one reasonable measure of sanctions aimed at deterring the perpetrator and compensating the victim.
 
 
 22
 Recently, in Chambers v. NASCO, --- U.S. ----, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court upheld a district court's sanction against a litigant pursuant to the court's "inherent powers." In that case, a party was punished for his bad-faith extra-judicial activities undertaken in an effort to frustrate the court's jurisdiction and orders. Lacking extensive authority on the scope of a court's inherent power to punish a party's disruptive and vexatious litigation activities (conduct not involving direct dealings with the court), the Supreme Court was nevertheless presented with Rule 11-styled theory and authority to help answer the question. Responding to, and responding with, Rule 11 reasoning and authority the Court held that "[i]t was within the court's discretion to vindicate itself and compensate NASCO by requiring Chambers to pay for all attorneys' fees." Id. at 2139.
 
 
 23
 In its very detailed opinions, the district court in this case clearly and sternly documents that Campbell's complaint was filed "without reasonable inquiry" and without being "well grounded in fact." Indeed, Campbell's antagonistic, windy, excessive and voluminous style of practice (well established in the district court's opinion) easily suggests that Campbell's trial strategy was to exhaust his opponent's financial resources by "needlessly increas[ing] the cost of litigation." For such manner and purpose in bringing the complaint before the court, Rule 11 expressly awards attorneys' fees. We believe, however, that attorneys' fees are particularly justified in this case as both compensation for defendants' expenses and as a deterrent to any similar performance in the future. Not only does the award address contents of the spurious complaint filed by Campbell, but it also addresses the bad-faith pursuit of the worthless complaint. Campbell inundated his opponent and the district court with lengthy (and insubstantial) briefs, mountains of discovery (affidavits hundreds of pages long), and measures designed simply to impede the rapid resolution of the case. Campbell's attempt to succeed on his RICO complaint by unnecessarily saddling his opponent with an exhausting and costly review of his submissions is an egregious and unjustified abuse of the judicial process. Campbell's purposeful infliction of added waste--added to what would otherwise be required to dispense with his RICO claim--is a choice for which he must now pay a penalty. A reasonably accurate measure of the harm he has done is what he has cost his opponent. This is not an unreasonable method to deter spurious suits and wasteful trial tactics. We conclude that the use of attorneys' fees and expenses as a measure for sanctions did not violate the purpose of Rule 11 and was not an abuse of discretion by the district court.
 
 C. Reasonableness of Schal's Fee Petition
 
 24
 Campbell maintains that even if the use of attorneys' fees is appropriate, the district court abused its discretion by approving the amounts claimed in the Schal defendants' fee petitions. Perhaps in response to the blizzard of motions, pleadings, exhibits, and volumes of other materials contained in this record, the district court produced a very lengthy and thorough analysis of Schal defendants' fee petitions for every aspect of what the court conclusively stated was frivolous litigation. In examining the reasonableness of Schal's attorneys' fees and expenses, the court divided the charges categorically as follows:
 
 1. Category A--General Litigation Services
 
 25
 Here the district court reviewed 21 sub-categories of attorney (and some paralegal) time submitted by Schal totalling voluminous hours. The court reviewed all of the submissions and the reasons for the work and considered each of Campbell's objections. Based on all considerations, the court found the time involved was reasonable.
 
 2. Category B--Discovery-Related Fees
 
 26
 The court subdivided this into two parts. The first part consisted of charges for discovery initiated by Schal. Campbell claimed they should be reduced because some of the information obtained could be used in the still-pending state action. The court awarded payment of the full amount but "without prejudice to Campbell's right to seek recoupment in state court" if appropriate. The second part consisted of research on the effect of Schal's pursuing discovery during the automatic stay in Campbell's bankruptcy. The court concluded the time involved was reasonable.
 
 3. Category C--Appeal-Related Fees
 
 27
 Schal claimed 233 hours in defending against two (consolidated) appeals filed by Campbell. Initially the court denied the claim because Schal had not met its burden of "demonstrating what a reasonable allowance should be." Schal moved to reconsider. The district court was incensed to find that Campbell had made a gross misrepresentation by claiming Schal's counsel was the attorney for all the appellees, including Northwestern University, and that Schal's fee request had not separated out the amount allocable to Schal alone. But this was not true. Northwestern was separately represented on appeal; thus all charges were properly separated claims under Rule 11. Nevertheless, the court concluded that the Supreme Court's recent ruling in Cooter & Gell barred the recovery under Rule 11 for any expenses incurred on appeal from a case a district court determined to be sanctionable.4. Category D--Rule 11-Related Fees
 
 
 28
 The district court included in its calculation the Schal defendants' cost of procuring Rule 11 sanctions. The validity of assessing these "fees on fees" will be discussed infra. In determining the amount of the assessment, the court divided Schal's claims into five subcategories, totalling $141,592.50. The court carefully evaluated the claims under each subcategory and concluded the total amount claimed was reasonable.
 
 
 29
 5. Category E--Miscellaneous Attorneys' Fees
 
 
 30
 Here the district court evaluated fees claimed under the names of various attorneys and paralegals. After individual scrutiny of each claim, the court determined that all of the time involved was reasonable.
 
 6. Expenses
 
 31
 Other than a question of whether charges for a legal expert were valid, most expenses were simply calculations for copying, transcripts, witness fees, and computer research. Campbell's objections were relatively mild. The court approved all expenses.
 
 
 32
 The court preliminarily concluded that the total fees and expenses due amounted to $351,664.96. In its supplemental order, 131 F.R.D. 512 (N.D.Ill.1990), the court added $7,511.10 for fees incurred in Schal's effort to have the court modify an earlier conclusion brought about by a misrepresentation to the court by Campbell. To the total amount the court also added $84,388.60 as a "delay factor" for a total of $443,564.66.
 
 
 33
 At this point we commend the district court for a very thorough analysis which included detailed findings in numerous fee and expense categories. This tedious effort underscores the necessity for penalizing attorneys who relentlessly pursue frivolous litigation. The enormous costs and time consumed by this case bring further injury to our already overburdened legal system.
 
 
 34
 All this aside, Campbell challenges at every turn the district court's conclusion that Schal's fee requests were reasonable. Two primary factors cause us to decline to re-examine the reasonableness of the hourly charges Campbell challenges. First, district judge Shadur presided over the numerous hearings and he scrutinized the voluminous filings. He witnessed first-hand not only the frivolity of the lawsuit which caused the Rule 11 sanction in the first place but also the effort involved to defend the many motions. Second, he determined the credibility of the witnesses, especially that of Schal's lead attorney Harris. After two days of testifying on the validity of timesheets, the court found his testimony very persuasive and totally credible. We cannot and will not invert those findings without a clear showing that they are erroneous. Campbell has not met this burden. After hearing and reviewing extensive testimonial and documentary evidence, the court determined that the fees and expenses were reasonable. Campbell has not demonstrated any basis for overturning that determination of reasonableness. The number of hours charged on this case is very large. Perhaps if we were sitting as trial judge, we would view them differently. Nevertheless, we conclude that the district court's methods were sound, and we find no abuse of discretion in his imposition of the sanction.
 
 
 35
 One question that does seem to seep between Campbell's lines is that if this litigation is so frivolous, why did it require so much time and effort to defend against it? We have insisted that a party cannot " 'foist its expenses off on its adversaries,' " especially when "[s]hallow claims may require costly replies." Classic Components Supply, Inc. v. Mitsubishi Electronics America, Inc., 841 F.2d 163, 165 (7th Cir.1988) (quoting In re TCI Ltd., 769 F.2d 441, 446 (7th Cir.1985)). These claims may have been shallow, but the volume of pleadings, documents, and other clutter in the record could fill a bottomless pit. We have little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was only firing blanks.
 
 D. Mitigation
 
 36
 Campbell complains that Schal's attorneys effectively churned this case in federal court. He claims that in the parallel state court action Schal made conclusive allegations in its motion for summary judgment and its subsequently-filed reply in support of that motion. But in federal court he claims Schal filed voluminous motions for two years before presenting the fruits of its earlier exhaustive analysis accomplished in state court.
 
 
 37
 Campbell's mitigation argument actually begs the question--why, with all of this "exhaustive" discovery already completed in state court--with a decision still pending--did he plunge into federal court with this frivolous RICO claim? Perhaps it was to employ a more potent threat, a chance to call defendants racketeers, and to exhaust his opponents into a settlement. Regardless of his strategy, the result is severe sanctions. Because of the complexity of the facts and issues in Crescent's claims, the Schal defendants cannot be faulted for failing to handle the case by less expensive or informal means like those that this court recommended in Dubisky v. Owens, 849 F.2d 1034, 1038 (7th Cir.1988). While Schal correctly asserts that litigants should mitigate legal fees and expenses by resolving meritless issues through the least expensive alternative, what constitutes the appropriate alternative will vary depending on the nature of the case. Id. (citing Thomas v. Capital Security Services, Inc., 836 F.2d 866, 880 n. 20 (5th Cir.1988) (en banc)). Here the district court carefully analyzed the different strategy of a federal RICO claim (with treble damages) and dismissed Campbell's claims as "sheer nonsense." 131 F.R.D. at 489. Schal should not be expected to bypass its initial 12(b)(6) defenses under RICO when it could possibly avoid sinking into extensive discovery in support of (and Crescent's opposition to) summary judgment. The court did dismiss Crescent's first amended complaint. The second amended complaint raised a much broader conspiracy that could not be as easily confronted. The district judge, who monitored this entire procedure carefully, did not abuse his discretion in allowing the full amount of sanctions for the work caused by Crescent's first and second amended complaints.
 
 E. Fees for Rule 11-Related Proceedings
 
 38
 Campbell argues that even if the district court appropriately concluded that the amount claimed in each category was valid, the district court impermissibly included in the sanction the attorneys' fees and expenses that Schal incurred in establishing the Rule 11 violation. Although this court endorsed the inclusion of such fees in Borowski v. DePuy, Inc., 876 F.2d 1339, 1342 (7th Cir.1989), and in Hays v. Sony Corp., 847 F.2d 412, 419 (7th Cir.1988), Campbell argues that the Supreme Court subsequently rejected that view. In Cooter & Gell, the Court held that in determining an appropriate sanction under Rule 11, a district court could not consider the attorneys' fees that a successful Rule 11 movant incurred in defending the award on appeal. Campbell maintains that the Court's rationale in Cooter & Gell applies with equal force to expenses incurred in the movant's pursuit of Rule 11 sanctions at the district court level. We disagree.
 
 
 39
 The Court's conclusion in Cooter & Gell stemmed from several policy considerations concerning Rule 11 and the Federal Rules of Civil Procedure in general. First, on its face, Rule 11 does not apply to appellate proceedings.
 
 
 40
 Its provision allowing the court to include "an order to pay to the other party or parties the amount of the reasonable expense incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee" must be interpreted in light of Federal Rule of Civil Procedure 1, which indicates that the rules only "govern the procedure in the United States district courts."
 
 
 41
 Cooter & Gell, 110 S.Ct. at 2461 (quoting Fed.R.Civ.Proc. 11). Second, while Rule 11 states that the order may include the amount of reasonable expense "incurred because of" the violative filing, the Court reasoned that responsibility under Rule 11 should be limited to "expenses directly caused by the filing, logically, those at the trial level." Id. The costs of defending an award under Rule 11 result from the district court's sanction not from the sanctioned filing. Cooter & Gell, 110 S.Ct. at 2462. Third, Federal Rule of Appellate Procedure 38 places an implicit limit on Rule 11's scope. On appeal, if a litigant's conduct is frivolous, Rule 38 gives the appellate courts authority to award expenses to the aggrieved party. Id. at 2461-62. Finally, limiting the inclusion of fees to those incurred at the district court level accords with the policy of not discouraging meritorious appeals. Id. at 2462.
 
 
 42
 Campbell argues that the "heart of the Court's analysis" was the "fear of discouraging meritorious appeals...." and asserts that expenses directly caused by his violation do not include the defendant's voluntary pursuit of Rule 11 sanctions. Campbell argues that "[i]f violators are routinely compelled to shoulder the victim's Rule 11-related fees, valid challenges to Rule 11 liability, like meritorious appeals, will be discouraged." (Appellant's Brief at 21 and 23). This cookie-cutter approach to Cooter & Gell conveniently ignores the bulk of the Court's analysis that clashes with Campbell's position. Nothing in the Court's opinion eviscerates the bright line distinction between appellate and district court proceedings that Cooter & Gell establishes. The Court does not limit recoverable expenses incurred at the trial court level to those incurred prior to the Rule 11 motion. On the contrary, the rationale behind the Court's decision suggests that the district court should include the costs of the Rule 11 proceedings. Pleadings, motions, or other papers signed by the attorney which are directed at Rule 11 proceedings in the district court are subject to the same scrutiny under Rule 11 as for any other proceeding before that court.
 
 
 43
 This conclusion has several legal as well as logical bases. First, Fed.R.Civ.P. 38 provides a separate and distinct mechanism for sanctioning frivolous appeals. Including Rule 11 expenses incurred in an appeal creates an overlap, a factor that concerned the Court. Id. at 2402. Second, in its analysis in Cooter & Gell, the Court borrowed the proximate cause concept from tort law to emphasize that the Rule 11 sanction itself--a judgment, in effect--proximately causes the appeal and the ensuing expenses. Rule 11 proceedings at the trial level, however, spring from the abusive filings submitted by the attorney of record. Grasping the Court's allusion, Campbell attempts to engraft the principles of tort law onto every Rule 11 sanction consideration. But the Court's determination that Rule 11 permitted "expenses directly caused by the plaintiff's filing, logically, those at the trial level," id. at 2461 (emphasis added), repudiates Campbell's attempt. Third, Campbell equates the potential "chill" of meritorious appeals that the Court observed in Cooter & Gell with the "chill" of meritorious opposition to Rule 11 motions; however, Campbell apparently missed the main point. The Court unequivocally stated in Cooter & Gell that "the central purpose of Rule 11 is to deter baseless filings in district court." Id. at 2454. Disallowing inclusion of the costs of appeal would not directly frustrate this purpose, but disallowing the costs of Rule 11 proceedings in district court would. If the Rule 11 movant did not have any hope of recovering the costs of bringing a meritorious Rule 11 motion unless the district court made a separate finding that opposition to the Rule 11 motion was frivolous, then an aggrieved litigant would be dissuaded from moving for Rule 11 sanctions.[3] This would undermine the deterrence goal of Rule 11. The need to promote the overall purpose behind Rule 11 outweighs any slight concern that some litigants may pause before responding to a Rule 11 motion through district court proceedings because of fear of increasing the ultimate sanction imposed against them. Anyway, the deterrence cuts both ways. If the Rule 11 motion lacks merit, the movant may be exposed to sanctions as well.
 
 
 44
 While our research has uncovered no cases where other circuits have directly addressed the issue that Campbell raises, we note that the other circuits have implicitly approved the inclusion of the costs of Rule 11 proceedings. In In re Kunstler, 914 F.2d 505, 523 (4th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991), which followed Cooter & Gell, the Fourth Circuit remanded a Rule 11 case and suggested that the district court should consider the reasonableness of the amount of time devoted to the pursuit of sanctions and whether the aggrieved parties had failed to mitigate costs. The Court never suggested that such fees could not be included. Rather, the court cautioned that when using fees as a measure of sanction and deterrence, the district court should carefully scrutinize the reasonableness of the fees. Id. at 523.
 
 
 45
 We conclude that the district court properly considered Schal's costs in pursuing Rule 11 sanctions.
 
 F. Sanctions on Motion to Reconsider
 
 46
 Campbell complains that even if the original sanction was appropriate, in Brandt III the district court inappropriately imposed additional sanctions related to Schal's motion to reconsider the denial of appellate costs. Because Campbell misrepresented to the district court that Schal's lawyers represented another appellee and were in effect over-charging in their request for appellate fees, the district judge initially denied $23,000 in fee and expense requests that he says he would have otherwise approved. 131 F.R.D. at 518. In its supplemental order, 131 F.R.D. 512 (N.D.Ill.1990), the district court awarded Schal defendants approximately $7,500.00 because the costs were forced on them as a result of Campbell's "egregious conduct." "Where such a direct misrepresentation to this Court by a lawyer is involved, fee shifting is indeed an 'appropriate sanction.' " 131 F.R.D. at 518. We decline to interfere with the district court's exercise of discretion.
 
 
 47
 Campbell's attorney claims his misrepresentation stemmed from his reliance on this court's published opinion, Brandt v. Schal Associates Inc., 854 F.2d 948 (7th Cir.1988), which listed only Jeff Harris and his firm as representing all of the defendants-appellees, which included Northwestern University. Campbell, who personally argued the appeal, presumably knew Northwestern was separately represented, but he did not communicate that to his attorney nor did his attorney ask before challenging the $23,000 claim. This was not a minor clerical mishap. Campbell's attorney was challenging a substantial claim with his assertion that Schal's attorneys were charging for work not covered by the sanction under Rule 11. When making a substantive challenge to a large claim, Campbell's attorney had a duty to look beyond what was published in the Federal Reporter. He should have at least verified it with his client. While the misrepresentation may not have been intentional, it was careless and should have been avoided. Campbell certainly knew better and should have interceded.
 
 
 48
 Contrary to Campbell's assertions, nothing in Cooter & Gell precluded the district court's action. Although Cooter & Gell stated that "Rule 11 is not a fee-shifting statute" that would allow district courts to require the losing party to pay both district court and appellate attorneys' fees, Cooter & Gell, 110 S.Ct. at 2462, the Court did not hold that a district court could never award fees under Rule 11. Rule 11 vests in the district court significant discretion to fashion an appropriate remedy and specifically permits the court to sanction the offending party with attorneys' fees. Consequently, we find no reason to hold that the district court abused its discretion by concluding that "fee shifting" was an "appropriate sanction" for Campbell's misrepresentation.
 
 G. Delay Factor
 
 49
 Campbell complains that the district court improperly treated Rule 11 like a fee shifting statute when in Brandt III it added the $84,000 "delay factor" to the sanction that it had already imposed. Campbell argues that this award is unsupportable as a tool of deterrence, particularly since the $351,000 award had already rendered Campbell bankrupt. Upon examining the district court's reasoning in this case, however, we find no abuse of discretion in the district court's addition of the delay factor.
 
 
 50
 While a district court typically includes a delay factor in a fee shifting statute, a delay factor may also be an appropriate measure for sanctions under Rule 11. As we explained above, deterrence and compensation are not mutually exclusive. While Cooter & Gell stated that "the central purpose of Rule 11 is to deter," the Court recognized that payment of the injured party's expenses is one way to serve Rule 11's purpose. Cooter & Gell, 110 S.Ct. at 2454. Therefore, while the Court did not specifically address the issue, nothing in the Court's opinion precludes a district court from employing the "make whole" approach and incorporating into a Rule 11 sanction all costs expended by the injured party at the district court level. The district court found that the addition of the delay factor followed logically from its use of the make whole approach:
 
 
 51
 [O]nce it is concluded--as this Court has--that the "make whole" remedy represents the appropriate sanction (Borowski, 876 F.2d at 1342 [footnote omitted], the question simply translates itself into what is necessary to make Schal Defendants whole for the money that they should not have had to expend on lawyers' fees but were compelled to as the proximate result of Campbell's conduct. [footnote omitted]
 
 
 52
 Brandt v. Schal, 131 F.R.D. 512, 521 (N.D.Ill.1990) (emphasis original). Since Rule 11 accommodates this approach, and the addition of the delay factor comports with the deterring and sanctioning purposes of the remedy, the district court acted within its discretion in fashioning "an appropriate sanction" which included a delay factor.
 
 
 53
 Campbell argues that the district court should have taken his bankruptcy into consideration before imposing the additional fine and cites cases from other circuits cautioning that Rule 11 sanctions should not be used to cause an attorney's financial ruin. While ability to pay may indeed be a legitimate consideration when imposing Rule 11 sanctions, see, e.g., In re Kunstler, 914 F.2d 505, 523 (4th Cir.1990) and White v. General Motors Corp., 908 F.2d 675, 685 (10th Cir.1990), Campbell specifically waived his ability to pay as a defense after wrangling with the defendants over the production of financial documents. Campbell does not deny that he waived consideration of his ability to pay but points out that after his waiver and before the district court issued Brandt III, Campbell filed for bankruptcy. Campbell's bankruptcy, however, did not alter the consequence of his earlier waiver. At the time of his original waiver, he presumably recognized his negative net worth yet still chose to waive his inability to pay as a defense. Declaring bankruptcy did not change Campbell's net worth; it changed only the entity managing his assets. Furthermore, Campbell has not referred us to any place in the record where he asked the district court to disregard his earlier waiver and consider his ability to pay in light of his bankruptcy. Since Campbell waived the defense below, he cannot raise it now on appeal.
 
 III. Conclusion
 
 54
 For the reasons stated, we conclude that the district court did not abuse his discretion by imposing Rule 11 sanctions, and we affirm the sanctions in all respects.[4]
 
 
 
 [1]
 Brandt v. Schal Associates, Inc., 121 F.R.D. 368, 369 (N.D.Ill.1988) ("Brandt I "), Brandt v. Schal Associates, Inc., 131 F.R.D. 485, 488 (N.D.Ill.1990) ("Brandt II "), and Brandt v. Schal Associates, Inc., 131 F.R.D. 512 (N.D.Ill.1990) ("Brandt III "). See also Brandt v. Schal Associates, Inc., 664 F.Supp. 1193 (N.D.Ill.1987), aff'd, 854 F.2d 948 (7th Cir.1988)
 
 
 [2]
 "Backcharges" are credits taken by Schal against a contractor (like Crescent) based on claims that the contractor wrongly caused Schal to incur additional expenses because the contractor damaged some other part of the construction project. The "backcharges" in question came to $12,500
 
 
 [3]
 Under Campbell's proximate cause analysis, even if the district court found that the sanctioned litigant's opposition to the Rule 11 motion was frivolous, the movant would be able to recover only the cost of responding to the frivolous opposition but not the cost of bringing the initial motion. We refuse to embrace such a limited approach to Rule 11
 
 
 [4]
 We note that all of our efforts and those of the district court appear to be an academic exercise as far as the Schal defendants are concerned. Supplemental authority provided by Campbell's counsel indicates that Campbell's insurance provides no coverage for the Rule 11 sanctions. Bar Plan v. Campbell, No. 91-57946 (Mo.App. Sept. 17, 1991) (1991 WL 179443). The absence of insurance coverage together with Campbell's bankruptcy suggest the Schal defendants are unlikely to receive much, if any, of the $443,564.66 imposed as sanctions