In re Charles and Mary KOUTERICK, Debtors.

**MIDLANTIC NATIONAL BANK, Plaintiff,**

v.

**Charles and Mary KOUTERICK, Defendants.**

Bankruptcy No. 92–33447.
Adv. No. 93–3079.

United States Bankruptcy Court, D. New Jersey.

May 24, 1994.

Joseph Benedict, Benedict and Altman, New Brunswick, NJ, for Brian Quentzel.

Edward McMahon, Lum, Hoens, Conant, Danzis & Kleinberg, Roseland, NJ, for Alan R. Ostrowitz and Ostrowitz & Ostrowitz.

Richard N. Shaine, Stark & Stark, Lawrenceville, NJ, for Midlantic National Bank.

Peter A. Berman, Matawan, NJ, for debtors.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's resolution of an order to show cause why sanctions should not be imposed on Brian Quentzel, Esq. under Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011") for misrepresentations and omissions of fact in a complaint, certification, and brief in this adversary proceeding. This matter arises from the petition of Charles and Mary Kouterick filed under chapter 13 of title 11, United States Code ("Bankruptcy Code" or "Code") on May 29, 1992. The essential facts and procedural history of the matter are set forth in *Midlantic National Bank v. Kouterick (In re Kouterick)*, 161 B.R. 755

(Bankr.D.N.J.1993), *aff'd,* No. 94–0258, slip op. (D.N.J. March 9, 1994). The following facts are undisputed.

The debtors, Charles and Mary Kouterick, filed a voluntary petition under chapter 7 of the Bankruptcy Code on February 22, 1991. The debtors listed the value of their residence in that case as $105,000. Midlantic National Bank ("Midlantic") held a second and third mortgage on the debtors' residence. After the trustee abandoned the estate's interest in the property and the automatic stay was vacated by consent order, Midlantic brought a foreclosure action on May 1, 1992. Ostrowitz and Ostrowitz, Esqs. represented Midlantic in the chapter 7 case and the foreclosure case.

On May 29, 1992, the debtors filed a petition under chapter 13 of the Code. In this case the debtors listed the value of their residence as $70,000. The debtors' chapter 13 petition listed Midlantic as a creditor but did not list the firm of Ostrowitz and Ostrowitz, Esqs. on the schedules.

On June 25, 1992, the court served a notice on all creditors including Midlantic of the commencement of the chapter 13 case, the date of the first meeting of creditors, and the date of the confirmation hearing ("the 341 notice"). The 341 notice also indicated that under the debtors' plan, Midlantic's mortgages would be "crammed down to zero"[1] and cancelled on the record. On November 16, 1992, the court confirmed the plan. Midlantic did not file an objection or appear at confirmation. In January 1993, the debtors commenced a state court action to cancel Midlantic's mortgages.

Three months after confirmation, Midlantic commenced an adversary proceeding seeking to revoke the order of confirmation under Code section 1330(a) on the grounds that the debtors procured confirmation through fraud. Midlantic was represented by the firm of Ostrowitz and Ostrowitz, Esqs. in the adversary proceeding and specifically, Brian Quentzel, Esq. ("Quentzel"). Quentzel argued on behalf of Midlantic that the debtors fraudulently represented to the court the value of their residence by decreasing the fair market value from $105,000 in their chapter 7 petition to $70,000 in their chapter 13 petition. Quentzel also made much of the fact that the debtors failed to serve notice of the chapter 13 case on Ostrowitz and Ostrowitz, Esqs. As to notice, the complaint signed by Quentzel stated:

11. That although the debtors and their attorney knew that the plaintiff was represented by OSTROWITZ & OSTROWITZ, ESQS., both in the prior Chapter 7 Case and during the foreclosure action that was instituted and served days before the Chapter 13 Petition was filed, the debtors and their attorney failed to list the plaintiff's attorneys, OSTROWITZ & OSTROWITZ, ESQS., anywhere on their Petition or provide the plaintiff's attorneys with notice of the Chapter 13 Petition and Plan, with its cram down provisions.

Compl. at 5.

The debtors filed a motion on August 2, 1993 for summary judgment dismissing the complaint and ordering Midlantic to cancel its liens of record. On August 17, 1993, Quentzel, on behalf of Midlantic, cross-moved for summary judgment dismissing the debtors' chapter 13 case or revoking the order of confirmation. In support of Midlantic's cross-motion, Quentzel signed a certification stating:

11. That, although the defendants and their attorney knew that OSTROWITZ & OSTROWITZ, ESQS., represented the plaintiff pursuant to the Chapter 7 appearance, subsequent negotiations, and the foreclosure proceeding, the defendants and/or their counsel inexplicably failed to list OSTROWITZ & OSTROWITZ, ESQS. on their Chapter 13 Petition.

\*　　\*　　\*　　\*　　\*　　\*

15. That, counsel for MIDLANTIC NATIONAL BANK did not learn of the confirmation hearing or cramdown until January 1993 when MIDLANTIC NATIONAL BANK was served with a complaint, filed by the defendants in the Superior Court of

---

1. The term "crammed dow to zero" means that the mortgages would be removed as liens on the grounds that the mortgages had no value because the amount due on the first mortgage of another party equalled or exceeded the value of the property.

New Jersey, to discharge the mortgages held by MIDLANTIC NATIONAL BANK.

\* \* \* \* \* \*

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Quentzel Certif. at 6–7, 10. The supporting brief signed by Quentzel, contained a "preliminary statement":

That, at all relevant times prior to and during this Chapter 13 Case, Counsel represented MIDLANTIC NATIONAL BANK. The Defendants and their counsel knew of this fact. Further, in their earlier Chapter 7 Case, it was definitively determined without objection after notice to the defendants and their counsel that the value of the Defendants' subject residence was and is $121,000.00. Thus in bad faith and in fraud, the Defendants filed a Chapter 13 Petition failing to place counsel for Midlantic National Bank on the schedules or matrix, modified a secured creditor's secured claim in violation of the United States Bankruptcy Code, and misrepresented the value of their residence by more than $50,-000.00 to cram down MIDLANTIC NATIONAL BANK's secured claim to zero. Having managed to obtain confirmation of said plan "behind the back" of the Plaintiff's counsel, the Defendants now attempt to hide behind the doctrine of *res judicata* and inapplicable case law.

Pl.'s Br. at 2. In the supporting brief, Quentzel argued that the court should either dismiss the chapter 13 because it was filed in bad faith or revoke the confirmation because it was allegedly procured by fraud. According to Quentzel, the first aspect of the debtors' bad faith was fraudulently listing the value of their property in the chapter 13 for less than it was valued in the chapter 7 in order to cram down Midlantic's liens. The other aspect of the alleged bad faith was the debtors' failure to serve notice on Ostrowitz & Ostrowitz, Esqs. *See* Pl.'s Br. at 5 ("First, the Debtors and/or attorney failed to include the name of MIDLANTIC NATIONAL BANK's attorneys in the bankruptcy schedules despite knowing the MIDLANTIC NATIONAL BANK was being represented by OSTROWITZ AND OSTROWITZ, ESQS."). As to the fraud allegations supporting revocation of the order confirming the chapter 13 plan, Quentzel again raised the debtors' revaluation of their residence and the "failure by either the Defendant and/or their counsel to schedule OSTROWITZ & OSTROWITZ, ESQS., on the matrix and schedules." Pl.'s Br. at 13.

The debtors responded to the plaintiff's brief by noting in pertinent part that Midlantic received the 341 notice and, therefore, Midlantic erred by not informing its attorneys. Moreover, the debtors alleged that Quentzel stated at a pre-trial conference that Midlantic had notice of the confirmation.

The court heard oral argument on the motions for summary judgment on August 24, 1993. At the hearing, the court questioned Quentzel regarding the notice aspect of his argument in support of revocation of confirmation. Quentzel stated that his representation at the pre-trial conference was not that Midlantic had actual notice of the filing of the petition, but rather, that Midlantic "was listed on a petition in the matrix." R. at 2 (August 24, 1993). When questioned by the court, Quentzel conceded that Midlantic was served in accordance with the bankruptcy rules, although he stated that he did not know if it actually received the notice. R. at 3 (August 24, 1993). Finally, Quentzel stated that, "My client, whether I know it or not, apparently received some sort of notice. They thought our office had the file, was on top of things, and it went by because my office had no idea of the Chapter 13." R. at 4 (August 24, 1993).

Based on the pleadings, certifications, brief, and oral statements of Quentzel at the hearing on the motion for summary judgment, the court surmised that the 341 notice was served on Midlantic and that Midlantic failed to inform Quentzel or anyone at his firm of the chapter 13. The court concluded that neither Quentzel nor his firm had any knowledge whatsoever that the debtors had filed a chapter 13 petition, that the plan provided for cramdown of Midlantic's lien, or of the date of the confirmation hearing.

The court reserved decision on the motion for summary judgment. A review of the main case file then revealed that Quentzel had filed a proof of claim and entered an appearance in the chapter 13 on July 27, 1992. The proof of claim directly contradicted Quentzel's representations that his firm did not know of the chapter 13 case until January 1993. The court issued a decision on November 24, 1993 granting the debtors' motion for summary judgment on the merits and sua sponte ordering Quentzel, the Ostrowitz firm and Midlantic to show cause why sanctions should not be imposed on them under Rule 9011 because of the statements in the complaint and in Quentzel's certification and brief to the effect that the Ostrowitz firm had no knowledge of the chapter 13 case. *Midlantic National Bank v. Kouterick (In re Kouterick)*, 161 B.R. 755 (Bankr.D.N.J.1993), *aff'd*, No. 94–0258, slip op. (D.N.J. March 9, 1994). The court heard testimony on January 20, 1994 and March 11, 1994. At the close of the hearing the court granted motions by Ostrowitz & Ostrowitz, Esqs. and Midlantic to dismiss the order to show cause as to them.[2]

## I. FINDINGS OF FACT

At the hearing on January 20, 1994, Quentzel testified that he was made aware of the debtors' chapter 13 case either in June or July of 1992 when Martha Ostrowitz, who was handling the foreclosure action, turned the file over to him after a title search dated June 1, 1992 revealed the chapter 13 filing. R. at 18 (January 20, 1994). Quentzel further testified that when the file was turned over to him he:

> took a brief look at the file, prepared a proof of claim. I may have asked the client for the figures to file that proof of claim. I sent that proof of claim to the court with a carbon copy to the debtor's attorney.... In addition to that, I sent a letter to the United States Bankruptcy Court requesting a copy of the Chapter 13

petition, plan and schedules and I believe that was all on January—July 27, 1992. R. at 19 (January 20, 1994). The proof of claim and appearance in the case were filed on July 27, 1992. Exhibit Q2. On July 23, 1992, Quentzel sent a letter to the court requesting copies of the petition, schedules and plan. Exhibit Q3. Quentzel testified that a response came back from the court while he was on vacation directing him to make his request to Lexplex Management Services. A letter was then sent from Ostrowitz & Ostrowitz, Esqs. on July 29, 1992 to Lexplex requesting the petition and schedules. Exhibit Q4. The signer of the letter could not be determined. Lexplex mailed copies of the petition and summary of the plan to Ostrowitz & Ostrowitz, Esqs. on July 31, 1992. Exhibit Q5. The 341 notice, which listed the scheduled confirmation hearing and stated that Midlantic's liens would be crammed down, was also included. R. at 47–48 (January 20, 1994); Exhibit Q10. According to Quentzel, the petition probably went to a paralegal who prepared a cover letter requesting the client to review the petition and schedules. This letter was signed by Quentzel and sent to Midlantic with the petition, plan, and schedules on August 14, 1992. Exhibit C1. He testified that he signed the letter and "apparently what happened was, it was put under my nose, I didn't bother to review anything but the cover letter." R. at 23 (January 20, 1994). Quentzel took no further action on behalf of Midlantic, and the plan providing for cramdown of Midlantic's liens was confirmed on November 16, 1992.

On December 30, 1992, the debtors filed a complaint against Midlantic in state court to cancel their liens of record. The complaint and a cover letter were faxed to Ostrowitz & Ostrowitz, Esqs. by Midlantic on January 26, 1993. Exhibit Q9. John Dailey ("Dailey") of Midlantic called Alan Ostrowitz on January 27, 1993 to discuss the complaint. *See* Exhibit Q8. The next day, Dailey sent a letter to Alan Ostrowitz requesting that Ostrowitz & Ostrowitz, Esqs. either answer the com-

---

**2.** The court granted these motions to dismiss based on the court's finding that the pre-amendment version of Rule 11 applied to this case. *See infra.* Under the old version of Rule 11, only the signer of the pleading can be held accountable

and not the signer's law firm. FED.R.CIV.P. 11 (1991). Although the client can also be held accountable under the old Rule 11, there was no evidence at the hearing that Midlantic was involved in the misrepresentations.

plaint or "move to have confirmation of his plan in the bankruptcy court vacated." Exhibit Q8. Alan Ostrowitz then discussed the matter with Quentzel. R. at 32 (March 4, 1994). Quentzel testified that this was the first time he learned of the confirmation and cramdown of Midlantic's mortgage. R. at 25 (January 20, 1994). Quentzel was instructed by Alan Ostrowitz to research the issue and see what could be done. Quentzel prepared a complaint for revocation of confirmation based on alleged fraud and presented it to Alan Ostrowitz for review. The original draft of the complaint did not raise the issue of notice. Exhibit Q6. Alan Ostrowitz testified that he reviewed the complaint and made notations concerning what he thought were insufficient allegations of fraud. The second draft of the complaint, which was ultimately filed, added the notice issue. According to the testimony of both Quentzel and Alan Ostrowitz, the second draft was not reviewed by Alan Ostrowitz.

The complaint, cross-motion for summary judgment and supporting papers allege lack of notice to Ostrowitz & Ostrowitz, Esqs. no less than six times. In support of Midlantic's cross-motion for summary judgment, Quentzel certified that "counsel for MIDLANTIC NATIONAL BANK did not learn of the confirmation hearing or cramdown until January 1993 when MIDLANTIC NATIONAL BANK was served with a complaint." Quentzel Certif. at 6–7, 10. This statement is false. The Ostrowitz firm had the chapter 13 plan providing for cramdown and the 341 notice with the date of the confirmation hearing in its possession as early as August 1992.

In substance, Quentzel attempts to explain this misrepresentation to the court by maintaining that he knew from the title search that the debtors had filed a chapter 13, but he did not know of the scheduling of the confirmation hearing or of the cramdown in the plan. Quentzel testified that he did not read the papers sent by Lexplex and, therefore, did not learn of the cramdown or confirmation until January 1993 when Midlantic referred the state court action to his firm.

Quentzel's argument is that he, personally, did not know of the chapter 13 confirmation or cram down until January 1993. According to Quentzel, the statement "[C]ounsel for MIDLANTIC NATIONAL BANK did not learn of the confirmation hearing or cramdown until January 1993" is true.[3] Apparently Quentzel wants the court to believe that he intended the term "counsel for MIDLANTIC" to refer solely to himself, and not to the Ostrowitz firm. Quentzel admitted in his testimony, however, that he reviewed the file before preparing the complaint and that the petition, schedules, and 341 notice received from Lexplex were in the file. Despite discovering that those papers had been in his firm's file since August of 1992, Quentzel still alleged that "counsel for MIDLANTIC NATIONAL BANK did not learn of the confirmation hearing or cramdown until January 1993." The court does not read this statement as narrowly as Quentzel now claims it was intended. Ostrowitz & Ostrowitz, Esqs. was counsel to Midlantic. The plain meaning of this statement to the court was that the firm of Ostrowitz & Ostrowitz, Esqs. had no notice or knowledge of the confirmation and cramdown until January 1993. That representation is plainly false, since the information in question had been in the firm's possession since August 1992. The court rejects Quentzel's argument that this statement is technically truthful and, instead, finds that Quentzel intentionally made a false statement of fact in the signed certification.[4]

Moreover, Quentzel omitted material facts from the pleadings and supporting papers. Quentzel alleged that the debtor obtained confirmation "behind the back" of Midlantic's counsel.[5] Quentzel failed to disclose, howev-

---

**3.** Notably, when Alan Ostrowitz of Ostrowitz & Ostrowitz, Esqs. was asked if this statement was true, he responded that the statement was not true. R. at 41 (March 4, 1994).

**4.** Because a certification in support of a motion for summary judgment contained this misrepresentation, Rule 7056(g) could have applied in addition to Rule 9011. The court did not raise

the issue of Rule 7056(g), however, and the parties did not address it. The court will therefore not consider it.

**5.** When questioned about his statement that the debtors obtained confirmation "behind the back" of Midlantic, Quentzel testified that:

A: I believe that was a reference to *In re Williams,* Your Honor.

er, that he and his firm had actual knowledge of the chapter 13 petition as evidenced by the filing of a proof of claim, entering an appearance in the action, and receipt of the plan and petition documents from Lexplex. Quentzel testified that the omission was unintentional. R. at 36, 71 (January 20, 1994). Specifically, Quentzel stated that:

Q Did you inform the Court on August 24, 1993 about the filing of the proof of claim and notice of appearance?

A No, Judge, *I didn't even think about it.*

 \* \* \* \* \* \*

[B]ased upon what was filed in the complaint and by virtue of the fact that it referred to the numbers listed in the petitions, yes, there must have been some reference to those documents, but as to the realization that I should bring to the Court's attention a proof of claim which the Court obviously had a copy of, I had no—no—*I just didn't think about it. It didn't even cross my mind* that this could be construed in hindsight to be some sort of omission that the Court should know about, that I should bring to the Court's attention. *I just didn't even give it the— more than half a second of contemplation.*

R. at 59, 71 (January 20, 1994) (emphasis added). However, Quentzel's notes dated May 10, 1993 contained a circled notation that *"notice & appearance have no bearing— need only show fraud."* Exhibit Q13 (emphasis added). Quentzel testified that although he did not remember when he prepared the notes, the phrase meant to him "that at the time I must have been doing this, there must have been some thoughts in my mind as to

Q: You didn't intend by that to mean that your firm and you didn't know about the— about the case or the confirmation hearing?
A: To the best of my knowledge, no, Judge.
Q: Doesn't behind the back suggest to you some deceit, some deceit perpetrated by the— by the plaintiff's counsel, wouldn't that be the ordinary meaning of that phrase?
A: Not that I am aware of, Your Honor.
Q: You didn't intend it to mean that in some manner the plaintiff's counsel had acted underhanded and had deceived you by not scheduling you?
A: To the best of my recollection, Your Honor, that—that—those three words were an indication that my office was not referenced on the petition and schedules.

the fact that there was a notice of appearance filed in 13 and it had no bearing whatsoever." R. at 40 (January 20, 1994). Quentzel's notes also contained a specific reference to the fact that a proof of claim was filed. Exhibit Q13. The court therefore does not find Quentzel's testimony credible that the failure to mention his firm's knowledge of the 13 case in the moving papers was unintended. Moreover, Quentzel raised lack of notice as an issue in an aggressive manner and implied wrongful and underhanded conduct by the debtors' attorney. The tone of the complaint and the papers on the cross-motion would certainly have been different if Quentzel had indicated that his firm had appeared in the action and filed a proof of claim.

Quentzel also omitted material facts in a subsequent letter to the court. After the court issued its opinion in *Midlantic National Bank v. Kouterick (In re Kouterick)*, 161 B.R. 755 (Bankr.D.N.J.1993), *aff'd*, No. 94–0258, slip op. (D.N.J. March 9, 1994) directing that Quentzel appear and show cause why sanctions should not issue, Quentzel sent a letter of explanation and apology to the court. In the letter, Quentzel denied that any misrepresentations or omissions were intentional and explained that he learned of the petition when Martha Ostrowitz assigned the file to him after a title search revealed the chapter 13. He also acknowledged that he filed a proof of claim. He maintained in this letter that his statement at oral argument that "my office had no idea of the chapter 13" was intended to mean only that Quentzel himself "did not realize that the debtors' Plan was designed to cramdown Midlantic National Bank's mortgage." [6] Quentzel Letter at 4

Q: But you didn't intend to imply by that that you didn't know about the case, is that correct?
A: I don't believe so, Judge.
R. at 57–58 (January 20, 1994).

**6.** Quentzel maintains that this statement at oral argument was "inadvertent," and attributes it to his alleged lack of experience on his feet, and "a great amount of pressure" he was under. He claims that the statement was not intentional and that he meant only to say that he, himself "did not realize that the debtors' Plan was designed to cramdown Midlantic National Bank's mortgage." Quentzel Letter at 4 (November 30, 1993). The court rejects this argument. Quent-

(November 30, 1993). This explanation would have been plausible if his office had never received the plan, petition, or 341 notice. Quentzel still did not disclose to the court in this letter, however, that his firm had requested and obtained copies of the petition, plan, and 341 notice in August 1992. Rather than disclose this obviously material fact in his letter, Quentzel again selectively omitted it because it would not have supported his interpretation of his statement at oral argument.

Quentzel's omissions and carefully-constructed representations were intended to mislead the court. The complaint, certifications and brief signed by Quentzel repeatedly allege that the debtors failed to list Ostrowitz & Ostrowitz, Esqs. on their schedules or otherwise serve notice on the firm. Although it is true that the debtors did not list Ostrowitz & Ostrowitz, Esqs. on their schedules, these and the other pertinent representations by Quentzel appear to have been carefully drafted to mislead the court to conclude that the firm of Ostrowitz & Ostrowitz, Esqs. had no knowledge of the chapter 13 filing whatsoever. Indeed, the court made it clear to Quentzel at the hearing on the motion for summary judgment that the court understood from the pleadings and supporting papers that until January 1993, neither Quentzel nor his firm had any knowledge of the chapter 13 filing. When the court questioned Quentzel regarding lack of notice, Quentzel confirmed the court's understanding by stating that "my office had no idea of the Chapter 13." R. at 4 (August 24, 1993). The court proceeded at that hearing to explain at length to Quentzel the consequences of a client neglecting to respond to a notice or forward a notice to its attorney. Quentzel made no attempt to clarify or correct the court's understanding at the hearing or thereafter until the court issued its opinion on the motion for summary judgment.

The court finds no merit in Quentzel's explanation of his misrepresentations and omissions. The court holds that the statement in paragraph 15 of Quentzel's certification, quoted on pages 356–57 *supra*, is an intentional misrepresentation. Moreover, the court finds that Quentzel intentionally omitted from the complaint, cross-motion for summary judgment, and supporting papers the fact that he had filed a proof of claim and entered an appearance on behalf of Midlantic in the debtors' chapter 13. Finally, the court concludes that Quentzel drafted the complaint, cross-motion for summary judgment and supporting papers in bad faith to intentionally mislead this court into believing that his firm had no notice of the chapter 13 case. The obvious purpose of this deception was to avoid accepting the consequences of the fact that his negligence in failing to review the documents received from Lexplex caused his client to lose the opportunity to object to confirmation of a plan which will remove its liens.

## II. CONCLUSIONS OF LAW

### A. Amendment of Federal Rule of Civil Procedure 11

Federal Rule Civil Procedure 11 ("Rule 11") was amended effective December 1, 1993. Rule 9011, which was substantially identical to the version of Rule 11 in effect prior to December 1, 1993, was not amended. The Third Circuit has not yet addressed whether the 1993 amendments to Rule 11 apply retroactively. However, Rule 11 was also amended in 1983 and the majority of courts then determined that the pre-amendment Rule 11 should apply if the pleadings were signed and filed before the amendment. *See e.g. Yagman v. Baden*, 796 F.2d 1165, 1185–86 (9th Cir.1986) ("Logically, because the charge of both versions of the rule speaks to the time of signing and filing, the older and less harsh Rule 11 should govern this complaint since it was in effect at that time."), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987); *Smith v. Detroit Federation of Teachers, Local 231*, 829 F.2d 1370, 1380 (6th Cir.1987) (Court would not apply amended rule where all pleadings, motions and other papers which could result in a Rule 11 violation were filed prior to the effective date of the amendment.); *Pantry*

zel's demeanor at oral argument was cool, poised and aggressive in asserting fraud by the debtors and their attorney. He stood up very well to the court's questioning at that hearing.

*Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 453 (7th Cir.1987) (Court would not apply amended rule to prior filings in pending case because the deterrent function of the rule would not be served.); *Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581, 1583–84 (11th Cir.1986) (Old version of Rule 11 applied to action commenced prior to amendment regardless that motion for sanctions was brought after the effective date). The court holds that the pre-amendment version of Rule 11 and Rule 9011 apply to pleadings signed and filed prior to the effective date of the amendment.[7] Because all the relevant pleadings were filed prior to December 1, 1993, the court will apply the old version of Rule 11 and corresponding Rule 9011 to this action.

## B. Violation of Federal Rule of Bankruptcy Procedure 9011

Under Rule 9011, the signer of a pleading has an obligation to make a reasonable inquiry into the facts and law which support the pleading. FED.R.BANKR.P. 9011; *Jones v. Pittsburgh National Corp.*, 899 F.2d 1350, 1359 (3d Cir.1990). Rule 9011 provides that:

> Signing and Verification of Papers
>
> (a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated.... *The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to*

> *cause unnecessary delay or needless increase in the cost of litigation or administration of the case....* If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

FED.R.BANKR.P. 9011 (emphasis added). The purpose of Rule 9011 is equivalent to that of Rule 11 and the applicable standard of review is the same under both rules. *See Landon v. Hunt*, 977 F.2d 829, 833 n. 3 (3d Cir.1992); *Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985). The U.S. Court of Appeals for the Third Circuit has summarized the essence of Rule 11 as follows:

> the rule imposes an obligation on counsel and client analogous to the railroad crossing sign, "Stop, Look and Listen." It may be rephrased, "Stop, Think, Investigate and Research" before filing papers whether to initiate a suit or to conduct the litigation. These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while recognizing the court's duty to serve the public efficiently. It bears repeating that the target is abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute.

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479 (3d Cir.1987). Although Rule 11 mandates that a court impose sanctions for violations of the rule, in this Circuit Rule 11 sanctions are to be imposed only in exceptional circumstances "where the claim or motion is patently unmeritorious or frivolous." *Dura Systems, Inc. v. Rothbury Investments, Ltd.*, 886 F.2d 551, 556 (3d Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990).

---

7. Because the court finds that the amended version of Rule 11 does not apply, the court need not address the effect, if any, which such amendment has on Rule 9011, which has not been amended.

■ Sanctions are imposed for pleadings not well grounded in fact and law after reasonable inquiry. *Bradgate Associates, Inc. v. Fellows, Read & Associates, Inc.,* 999 F.2d 745, 752–53 (3d Cir.1993) ("Even if not carried out for such an inappropriate purpose, a lack of reasonable investigation would nonetheless serve as a basis for the imposition of sanctions under Rule 11."). The legal standard for alleged violations of Rule 11 is "reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 289 (3d Cir.1991) (citing *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 546–547, 111 S.Ct. 922, 931–932, 112 L.Ed.2d 1140 (1991)). Reasonableness is defined as "an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Id.* (quoting *Jones v. Pittsburgh National Corp.,* 899 F.2d 1350, 1359 (3d Cir.1990)). According to the Third Circuit the objective reasonableness standard "seeks to discourage pleadings 'without factual foundation, even though the paper was not filed in subjective bad faith,'" and to ensure that pleadings are not made for improper purposes such as delay, harassment or to increase litigation expenses. *Lony v. E.I. Du Pont De Nemours & Co.,* 935 F.2d 604, 615 (3d Cir.1991) (quoting *Lieb v. Topstone Indus.,* 788 F.2d 151, 157 (3d Cir.1986)). "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted." *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985). Five factors to be considered in determining reasonableness are:

■ the amount of time available to the signer for conducting the factual and legal investigation;

■ the necessity for reliance on a client for the underlying factual information;

■ the plausibility of the legal position advocated;

■ whether the case was referred to the signer by another member of the Bar; [and]

■ the complexity of the legal and factual issues implicated.

*Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 95 (3d Cir.1988) (citing FED.R.CIV.P. 11 advisory committee note; *Thomas v. Capital Security Servs., Inc.,* 836 F.2d 866, 875 (5th Cir.1988)).

■ Considering these five factors, the pleadings and supporting papers filed by Quentzel were not well grounded in fact and law after a reasonable inquiry. First, Quentzel had ample time to conduct a thorough investigation into the facts and law before filing the complaint. Although the cross-motion for summary judgment was prepared within two weeks in response to the motion for summary judgment, that was ample time in light of the fact that Quentzel should previously have reviewed the file before preparing the complaint. Second, Quentzel did not have to rely on his client for factual information because all facts supporting the argument of lack of notice were in documents in the firm's file. Third, as the court will address further, the legal position advocated by Quentzel was not plausible unless Quentzel omitted material facts. Fourth, the chapter 13 case was not referred to Quentzel by any other member of the bar.[8] Finally, the legal and factual issues were not complex. Quentzel relied on only one reported case in support of the lack of notice argument, and that case was distinguishable because Quentzel and his firm had notice. Clearly, an objectively reasonable inquiry must include reviewing a case file and the facts of a case before drafting, signing, and filing a complaint, certification or brief. Under the interpretation which would be most favorable to Quentzel, one would have to conclude that Quentzel did not make a reasonable inquiry into the facts and law supporting his complaint and cross-motion for summary judgment as required under Rule 9011. However, as previously noted, the court holds that Quentzel intentionally omitted disclosure of

---

**8.** The court does not construe this factor as referring to an assignment of work by a partner to an associate in the same firm.

**364**

the fact that he and his firm had actual notice, and that such omission was in bad faith for the purpose of deceiving the court.

In addition, the complaint and cross-motion for summary judgment were not well grounded in fact or warranted by existing law. Quentzel argues that the complaint is grounded on fraud, not lack of notice, and that he should not be sanctioned simply because Midlantic lost the fraud claim on the merits. It is of course true that merely losing on the merits of a claim does not violate Rules 11 or 9011. *CTC Imports and Exports v. Nigerian Petroleum Corporation,* 951 F.2d 573, 559 (3d Cir.1991) ("Rule 11 sanctions bad faith and unreasonable conduct; it does not sanction bad or undesirable results."), *cert. denied,* —— U.S. ——, 112 S.Ct. 1950, 118 L.Ed.2d 554 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 328, 121 L.Ed.2d 246 (1992); *Teamsters Local Union No. 430 v. Cement Express, Inc.,* 841 F.2d 66, 68 (3d Cir.1988), *cert. denied,* 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988). Quentzel's failure on the merits of the claim for revocation on the grounds of fraud is therefore not a Rule 9011 violation. However, one of the two grounds pressed for revocation was lack of notice to counsel for Midlantic. That misrepresentation of fact rendered the pleading, to say the least, not "well grounded in fact and ... warranted by existing law" after a reasonable inquiry and, therefore, Quentzel violated Rule 9011.

Factual omissions may also be the basis for a violation of Rules 11 or 9011. *See e.g. In re Ronco, Inc.,* 838 F.2d 212, 218 (7th Cir.1988); *Rice v. Hamilton Oil Corp.,* 658 F.Supp. 446, 449 (D.Colo.1987) (Rule 11 sanctions imposed for selective omissions from quotations which distorted the meaning of statements.); *Sharjah Inv. Co. Ltd. v. P.C. Telemart, Inc.,* 108 F.R.D. 90, 102 (S.D.N.Y. 1985) (Attorney was sanctioned under Rule 11 for failure to disclose a material fact.); *Itel Containers Int'l Corp. v. Puerto Rico Marine Management, Inc.,* 108 F.R.D. 96, 102 (D.N.J.1985) ("The defense argument that it did not contain a false statement not only overlooks that falsity may lie in omission as well as commission, here defendant's refusal to answer that paragraph of the complaint that asserted diversity jurisdiction; the argument is founded on a false premise in that a misleading message was affirmatively conveyed by inclusion of the counterclaim, namely, that subject matter jurisdiction existed."). The Seventh Circuit explained that:

> While the appellant did not misstate an empirical fact, it did omit facts that were highly relevant to an accurate characterization of the facts that were stated. Such an obvious omission placed a heavy burden on the court. The presentation amounts, in its totality, to a half-truth that can be just as misleading, sometimes more misleading, than an absolutely false representation. For purposes of determining whether sanctions are appropriate, it is not relevant that a later submission by the appellees brought the truth to light.... The impact on the court and on the opposing party occurs when the initial omission is made. Later correction does not permit a recoupment of the time, energy or, in some cases, money that has already been expended.

*In re Ronco,* 838 F.2d at 218.

Only those factual omissions that are material or render the pleading misleading as a whole violate Rules 11 or 9011. The determination of which facts are material depends upon applicable substantive law. *See generally Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (For purposes of summary judgment "substantive law identifies which facts are material."); *Jackson v. University of Pittsburgh,* 826 F.2d 230, 232 (3d Cir.1987) (On motion for summary judgment "[m]aterial facts are those 'that might affect the outcome of the suit under the governing law.'"), *cert. denied,* 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); *Levendos v. Stern Entertainment, Inc.,* 860 F.2d 1227 (3d Cir.1988) (same); *see also* BLACK'S LAW DICTIONARY 881 (5th ed. (1979) ("The 'material facts' of an issue of fact are such as are necessary to determine the issue. Material fact is one upon which outcome of litigation depends.").

The fact that Ostrowitz & Ostrowitz, Esqs. had filed a proof of claim and appeared in the

chapter 13 action was material to the cross-motion for summary judgment, and Quentzel omitted it from the papers in support of the cross-motion. In the brief in support of the cross-motion for summary judgment, Quentzel argued that failure to serve notice on his firm was grounds for revocation under *In re Williams*, 51 B.R. 627 (Bankr.S.D.Ohio 1985). In that case, the court granted relief to a creditor who failed to object or appear at confirmation, holding that the counsel for a debtor was required to include the creditor's attorney on the petition schedules when the debtor's counsel knew of the representation. In the brief in support of Midlantic's cross-motion for summary judgment Quentzel stated that:

> First, the Debtors and/or attorney failed to include the name of MIDLANTIC NATIONAL BANK's attorneys in the bankruptcy schedules despite knowing that MIDLANTIC NATIONAL BANK was being represented by OSTROWITZ AND OSTROWITZ, ESQS. For all relevant purposes, the facts of *In Re Williams*, 51 B.R. 627 (Bankr.S.D.Ohio 1985) are identical to the facts of the instant case.... *The facts in the instant case are identical.*

Pl.'s Br. at 5–6 (emphasis added).

In *In re Williams*, however, *lack of actual notice to the creditor's attorney* of the confirmation date and meeting of creditors *and the absence of an appearance in the case by the creditor's attorney* were material to the outcome. The creditor's attorney actually did not know of the first meeting of creditors or the date of the confirmation hearing. Additionally, the *Williams* court found that the attorney did not enter an appearance in the case. Quentzel's omission in the complaint, certification and brief of the filing of the proof of claim and appearance, actual knowledge of his firm of the confirmation date, and

cramdown were material omissions that would certainly affect the court's analysis of the reasoning and applicability of *In re Williams*.[9] If Quentzel had informed the court at the inception that his firm had actual notice, then notice would never had been a relevant issue. Contrary to Quentzel's argument in the above-quoted brief, the facts of *In re Williams* would be "identical to the instant case" only if Quentzel omitted material facts from his complaint, certification and brief. Because material facts were omitted, the court finds that Quentzel violated Rule 9011.

▪▪▪ Rules 11 and 9011 are also violated if a pleading is used for an improper purpose. FED.R.CIV.P. 11 (1987); *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir.1986); *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1091 (3d Cir.1988) ("Fed.R.Civ.P. 11 requires an attorney who signs a complaint to certify both that it is not interposed for improper purposes, such as delay or harassment, and that there is a reasonable basis in law and fact for the claim."). Rule 11 and 9011 sanctions are imposed if the pleading "constituted abusive litigation or misuse of the court's process." *Mary Ann Pensiero, Inc.*, 847 F.2d at 95 (quoting *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir.1988). Sanctions may be warranted even if the opposing party has not been prejudiced and has not incurred increased costs due to the violation. *See e.g. Bradgate Associates, Inc.*, 999 F.2d at 752 ("The focus of a district court's Rule 11 inquiry is the reasonableness of the investigation and not whether the movant is prejudiced by his or her opponent's actions. To consider prejudice alone is to overlook the fundamental objective of Rule 11, which is to encourage

---

9. When asked if he thought it was important or necessary to disclose that his firm had actual notice of this case, Quentzel responded, "I don't believe so, Judge." R. at 51 (January 20, 1994). He further testified:

> Q: The omission by the debtors to inform you was important in itself and your actual notice was irrelevant, that's basically what your state of mind was?
> A: As to what my state of mind, Judge, my state of mind was, and this is my recollection,

but my state of mind was that the cause of action was for fraud under 1330 and the remaining allegations in the complaint were just a means of giving facts and adding color to the complaint.

> Q: Adding color, what kind of color, Mr. Quentzel, what does that mean?
> A: It means, to the best of my recollection, Judge, the only reason I added the notation as to the notice was because of *In re Williams*.
> R. at 51–52 (January 20, 1994).

the filing of documents that are well-grounded in both law and fact."); *William S. v. Gill,* 572 F.Supp. 509, 519 (N.D.Ill.1983) (Opposing party not prejudiced by conduct but sanctions were warranted regardless in the interest of "preserving the integrity of the justice system."), *dismissed,* 591 F.Supp. 422 (N.D.Ill.1984). Misuse of the judicial process through misrepresentations is an improper purpose. *See Lony,* 935 F.2d at 617 (Remanded for reconsideration including whether a party "abused the judicial process by denying an allegation it should have known to be true."); *Mercury Service, Inc. v. Allied Bank of Texas,* 117 F.R.D. 147, 156 (C.D.Cal. 1987) ("In appropriate circumstances, a district court may impose a punitive sanction for the filing of a paper that lacks factual foundation and is intended to mislead the Court and opposing parties, even if the paper does not significantly delay proceedings, because of the disrespect shown to the judicial process."), *aff'd,* 907 F.2d 154 (9th Cir.1990).

The complaint, cross-motion for summary judgment and supporting papers were signed by Quentzel with an improper purpose for the reasons previously stated. The misrepresentations and omissions in the pleadings and supporting papers signed by Quentzel were intended in bad faith to mislead this court and, therefore, the court holds that Quentzel's actions constitute a misuse of the judicial process in violation of Rule 9011.

### C. Sanctions Imposed

 Once the court finds that an attorney has violated Rules 11 or 9011, the court must impose sanctions. FED.R.CIV.P. 11 (1987); *In re Gioioso,* 979 F.2d 956, 960 (3d Cir.1992). The court has discretion as to the sanctions imposed.[10] *In re Gioioso,* 979 F.2d at 961. Rules 11 and 9011 authorize a broad range of sanctions. *Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 585–86 (3d Cir.1985) (quoting FED.R.BANKR.P. 9011 advisory committee's note.) Rule 9011 provides in pertinent part:

If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both,

an appropriate sanction, which may be include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

FED.R.BANKR.P. 9011. When imposing sanctions the court should consider "the state of the attorney's ... actual or presumed knowledge when the pleading or other paper was signed." FED.R.CIV.P. 11 (1987) advisory committee's note. Hence a subjective inquiry is relevant for determining what sanctions to impose. *Lieb,* 788 F.2d at 157.

Quentzel argues that attorney's fees or other monetary sanctions are inappropriate because the complaint for revocation of confirmation was well grounded in fraud and filed at the direction of the client. Therefore, Quentzel argues that debtors incurred no added expense because only the notice aspect of the proceedings may be the subject of Rule 9011 sanctions. Instead, Quentzel asks that he be ordered to obtain continuing legal education.

 The court declines to award the debtor any attorney's fees as part of the sanction. As previously noted, Midlantic's argument regarding the value which the debtor ascribed to the real property was not so frivolous that the complaint would have violated Rule 9011 even if lack of notice had not been alleged. The debtors would therefore have had to defend against the complaint in any event. Moreover, the debtors have not argued that reimbursement of fees should be part of any sanction.

 It does not follow, however, that no monetary sanction is appropriate. The primary purpose of sanctions under Rules 11 and 9011 is to deter repetition of improper conduct. *Waltz v. County of Lycoming,* 974 F.2d 387, 391 (3d Cir.1992). Monetary sanctions certainly tend to deter such conduct. Quentzel's conduct in this case was not merely improper; it was egregious.

As previously noted, the filing of the complaint commencing this adversary proceeding

---

10. The court is required to set forth the reasons for the specific sanctions imposed to provide a

basis for review of its exercise of discretion. *In re Gioioso,* 979 F.2d 956, 961 (3d Cir.1992).

occurred because of Quentzel's negligence in failing to read papers which he received from the court and which set forth the terms of the plan and the deadline for filing objections. Of course, Quentzel's negligence did not violate Rule 9011. Indeed, one can even sympathize with Quentzel's situation after he realized what had happened. The realization that his negligence had resulted in the loss of his client's opportunity to object to confirmation must have been devastating.

It was, however, an egregious response to claim that his firm had no knowledge of the bankruptcy filing when he knew that it had such knowledge. The court is certain that the complaint and the papers on the cross-motion for summary judgment were carefully written to convey the impression that his firm had no knowledge of the case, without actually saying so. Quentzel confirmed that the court had gotten the impression which he intended when he stated in open court on the motions for summary judgment that "my office had no idea of the chapter 13." For the reasons previously stated, Quentzel's explanation of these events has no credibility whatsoever.

Aside from stealing from a client or from other funds entrusted to one's care, it is difficult to imagine conduct of an attorney which is more improper than repeatedly lying to a court in the cold, calculated way which Quentzel did here. It is very disturbing that he was able to look me in the eye and lie with such ease, to lie repeatedly in his papers, and to blame his adversary for the consequences of his own negligence. The court and the public are entitled to expect much more from an attorney. It sometimes takes courage to act with integrity, and Quentzel was in such a situation when he realized his negligence. If integrity was always easy, however, it would not have much value. And the role of an attorney requires integrity. Those who have no problem lying to a court do not belong in the practice of law. If an attorney can lie to a court with such ease, such an individual would not have any difficulty in lying to adversaries or clients either.

Quentzel hopes that by suggesting an order for continuing legal education on professional responsibility as a sanction, he will be spared more expensive alternatives. The suggestion has some initial appeal, since the court certainly hopes that Quentzel will learn whatever is necessary to prevent a repetition of his conduct in this case. It does not appear, however, that a course on professional responsibility is likely to help with this particular problem. Such courses tend to focus on Rules of Professional Conduct other than 3.3, "candor toward the tribunal," since most law students and lawyers do not need to be taught that it is wrong to intentionally mislead a court about the facts of a case. The problem here is, how can a person acquire integrity if he does not already have it by virtue of his life's experience when he is old enough to be admitted to the bar? It might be hoped that an experience as painful as the review of his conduct in this case would in itself have a chastening effect on Quentzel. It does not appear, however, that Quentzel has gotten the message as yet, since he continues to deny that he intended to mislead the court in spite of compelling evidence that he did. The court therefore concludes that an order directing attendance at a course on professional responsibility would not be helpful in this case.

Since, as previously noted, the purpose of sanctions under Rule 9011 is to deter repetition of improper conduct and since monetary sanctions tend to have a deterrent effect, Quentzel shall pay a sanction of $1,000.00 to the court clerk within 30 days.

The court considers Quentzel's breach of his duty in this case to be so serious, however, that the primary sanction should be that which is imposed by the Board of Bankruptcy Judges in the disciplinary proceeding for violating RPC 3.3, after considering the recommendation of the Bankruptcy Court Lawyers' Advisory Committee.