**In re Barbara B. SLAUGHTER, Debtor.**

**Bankruptcy No. 95–32565–13.**

United States Bankruptcy Court,
W.D. Wisconsin.

Dec. 21, 1995.

John W. Gibson, Madison, WI, for Debtor.

William A. Chatterton, Ross & Chatterton, Madison, WI, Chapter 13 Trustee.

## MEMORANDUM DECISION:

ROBERT D. MARTIN, Chief Judge.

On October 2, 1995, attorney John W. Gibson volunteered at the outset of a hearing on a motion to dismiss this chapter 13 case that, "we have had a hard time making contact with her [the debtor] and we have not been able to—we have not been able to find out enough information to defend the plan, so." I inquired "On what basis did you then object to the motion to dismiss?" Mr. Gibson said, "I think she missed the first § 341 meeting and Mr. Chatterton permitted us to try to further find her and we did. And she did come into our office and set forth a, well, set forth a partial justification for a plan; in other words, she did come in once. We tried, for instance, to find her today and we were not able to locate her." Unsatisfied with that response, I issued an order to show cause why sanctions ought not be imposed under FRBP 9011 for filing an objection to the motion to dismiss.

At the hearing on the order to show cause, Mr. Gibson presented an affidavit of Aloysius Rohmeyer, described by Mr. Gibson as his paralegal, and Mr. Gibson's own testimony. At the close of his testimony, Mr. Gibson offered certain papers from his files, including a schedule of debts, a questionnaire including a budget, some miscellaneous notes, and a fee agreement. In the absence of any objection, those documents, together with the affidavit of Mr. Rohmeyer, were received in evidence. It is not clear whether the documents offered from his file constitute all the papers in that file, but Mr. Gibson's testimony makes it clear that there are no other notes of interviews or telephone calls with the debtor.

The evidence establishes the following facts:

Sometime prior to June 6, 1995, Barbara Slaughter called Gibson Law Office stating that she wanted to file a chapter 13 bankruptcy. After reviewing Mr. Gibson's calendar, Mr. Rohmeyer set up an appointment on June 6, 1995. On June 6, 1995, Mr. Rohmeyer gave Mr. Gibson a set of chapter 13 forms which included a "chapter 13 questionnaire," "schedule of debts," "personal property," and an "attorney/client basic fee agreement" which Mr. Gibson in turn gave to Ms. Slaughter. Mr. Gibson engaged in some explanation of the forms and instructed Ms. Slaughter to complete the forms and return them to Gibson Law Office as soon as possible. Thereafter, Mr. Gibson and Ms. Slaughter conferred about chapter 13 outside Mr. Rohmeyer's presence. Prior to leaving Gibson Law Office on June 6, 1995, Ms. Slaughter met with Mr. Rohmeyer, apparently signed a chapter 13 petition and an application to pay filing fees in installments, and advised him that she would fill out the forms and return them immediately. She also told him that she had a co-signed loan on which a finance company was threatening action against the cosigner, and that a utility provider was going to stop her service.

Ms. Slaughter returned to the Gibson Law Office on June 22, 1995, and gave the partially completed forms to Mr. Rohmeyer. Mr. Rohmeyer and Ms. Slaughter reviewed the forms together and noted gaps in the information. Mr. Rohmeyer calculated that, although unemployed, Ms. Slaughter had $936 monthly income from unemployment compensation and that her monthly expenses came to $665. Apparently, Ms. Slaughter signed a fee agreement at that meeting or

sometime on June 22, 1995. Mr. Rohmeyer advised Ms. Slaughter that additional information remained necessary and would have to be provided within 15 days after the petition was filed. After meeting with Ms. Slaughter, Mr. Rohmeyer discussed her case with Mr. Gibson, relaying his calculation of Ms. Slaughter's ability to pay some of her debts under chapter 13. At that conference, Mr. Rohmeyer also relayed to Mr. Gibson the information he had obtained on June 6 about the co-signed loan and the threatened cutoff of utility service. Mr. Gibson testified that he directed Mr. Rohmeyer to prepare a "short form filing" for Ms. Slaughter's signature. In the parlance of the Gibson Law Office, a short form filing appears to be the filing of a bankruptcy petition with few, if any, supporting papers. (Mr. Gibson's testimony as to when the petition was prepared is inconsistent with the June 6, 1995, date on both the chapter 13 petition and the application to pay filing fees in installments that were filed to commence this case.) Mr. Gibson did not meet with Ms. Slaughter on June 22, 1995.

Early on Saturday, August 5, 1995, Mr. Gibson left on a family vacation from which he returned on August 14. The day prior to leaving, he signed Ms. Slaughter's chapter 13 petition. The petition was filed at the court on Wednesday, August 9, 1995, by Mr. Rohmeyer. When I asked, "So whether to file and when to file the petition was a decision left to Mr. Rohmeyer?" Mr. Gibson answered "yes."

Neither Mr. Gibson's testimony nor Mr. Rohmeyer's affidavit establish what happened after Mr. Gibson's departure on August 5 to justify filing the pre-signed petition on August 9. In fact, Mr. Gibson did not meet with or speak to Ms. Slaughter between June 6, 1995, and August 9, 1995, and Mr. Rohmeyer's only contact with Ms. Slaughter during that same period occurred on June 22, 1995.

On September 1, 1995, William A. Chatterton, the chapter 13 trustee, served a motion to dismiss Ms. Slaughter's chapter 13 proceeding because neither schedules nor a plan had been timely filed in the case. Mr. Chatterton's motion provided that if a response were not made by September 21, 1995, the case would be dismissed without further proceeding.

Following the filing of the bankruptcy petition until shortly after the conclusion of the meeting of creditors scheduled pursuant to § 341 on September 19, 1995, neither Mr. Rohmeyer nor Mr. Gibson spoke with Ms. Slaughter. On September 19, Ms. Slaughter did not arrive at the scheduled time for the meeting of creditors, but thereafter met very briefly with Mr. Rohmeyer, or possibly with both Mr. Gibson and Mr. Rohmeyer, at the place set for the § 341 meeting. Ms. Slaughter agreed to meet with Mr. Rohmeyer the next day, September 20, 1995.

On September 20, Ms. Slaughter met with Mr. Rohmeyer at the Gibson Law Office and supplied some additional information but not enough to complete the schedules or a plan. Mr. Gibson did not meet with Ms. Slaughter on September 20, 1995. At some time after Mr. Rohmeyer's meeting with Ms. Slaughter on September 20, Mr. Gibson signed and filed with the court an objection to the motion to dismiss Ms. Slaughter's case. A hearing on that objection was set for October 2, 1995. At no time between September 20, 1995 and October 2, 1995, did Mr. Rohmeyer or Mr. Gibson meet with or talk to Ms. Slaughter. At no time prior to October 2, 1995 were bankruptcy schedules completed or a chapter 13 plan drafted for Ms. Slaughter. At the time of his affidavit on October 23, 1995, Mr. Rohmeyer estimated that completion of the schedules would require an additional week.

There are numerous questions raised by these facts including: Who should determine that there is a financial emergency which can be benefitted by filing a bankruptcy petition? When is it appropriate to file a chapter 13 case? And what authority can be given to a paralegal? However, the sole issue which this opinion addresses is whether sanctions are appropriate under FRBP 9011(a) for signing and filing an objection to a trustee's motion to dismiss a chapter 13 case when the attorney signing the objection had no basis in fact or law to believe that there was a meritorious ground for the objection. I conclude that sanctions in this case are required.

██ FRBP 9011 provides in pertinent part:

Rule 9011

### Signing and Verification of Papers

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may be include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Rule 9011 is identical to former Rule 11 of the Federal Rules of Procedure. The peculiarity that recent amendments to FRCP Rule 11 have not, as yet, been carried over into FRBP 9011 highlights the broad reach of Rule 9011. Had the drafters of the bankruptcy rules picked up Rule 11 by incorporating FRCP Rule 11 in Part VII of the Federal Rules of Bankruptcy Procedure, as was done with most other Federal Rules of Civil Procedure, it would apply only to pleadings and other papers filed in adversary proceedings. Because of the nature of bankruptcy procedure, it was determined that the care and good faith required by Rule 11 should reach all petitions, pleadings, motions and other papers served in a case under the Bankruptcy Code and not be limited to filings in adversary proceedings. Thus, when the Federal Rules of Civil Procedure, specifically Rule 11, were amended in 1993, that amendment was not incorporated by reference in FRBP 9011. A current proposal to amend the bankruptcy rules seeks to align the wording of Rule 9011 with the present Rule 11. The point of this discussion is that, beyond any doubt, Rule 9011 covers the signing and filing of an objection to a motion to dismiss, just as it would any other petition, pleading, or motion filed in a case under U.S.C. Title 11.

██ This court retains jurisdiction over this Rule 9011 issue even though the case was dismissed on October 2, 1995. *See, e.g., In re Whitney Place Partners,* 123 B.R. 117 (Bkrtcy.N.D.Ga.1991), *aff'd* 966 F.2d 681 (11th Cir.1992), *supplemented* 147 B.R. 619 and *counsel listing corrected by* 154 B.R. 610 (Bkrtcy.N.D.Ga.1992) (dismissal of Chapter 11 case for bad faith filing does not deprive bankruptcy court of jurisdiction over Rule 9011 motion); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393–98, 110 S.Ct. 2447, 2454–57, 110 L.Ed.2d 359 (1990) (voluntary dismissal does not deprive a district court of jurisdiction over a Rule 11 motion). This matter is a core proceeding pursuant to 28 USC § 157(b).

██ Rule 9011 contains two separate standards. A violation of either requires sanctions. The first standard asks whether the attorney filed or served a document which is not well-grounded in fact *or* warranted by existing law or by a good-faith argument for its modification, where a *reasonable inquiry* would have revealed the deficiency. The second standard asks whether a document was filed or served for an *improper purpose.* A filing made for any improper purpose must be sanctioned, regardless of its support in law or fact, and a filing made in good faith must be sanctioned if it is not based on reasonable inquiry into the law or facts. *In re Excello Press, Inc.,* 967 F.2d 1109, 1112 (7th Cir.1992). Both Rule 11 and FRBP 9011 establish a duty, not just to

opposing counsel and litigants, but to the legal system "to avoid clogging the courts with paper that wastes judicial time and thus defers the disposition of other cases or, by leaving judges less time to resolve each case, increases the rate of error." *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir.1989). The subjective good faith belief of an attorney is no defense under either Rule 11 or Rule 9011: "An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986).

The reasonable inquiry standard is said to be objective. *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (en banc). The reasonableness of an attorney's inquiry "focuses on inputs rather than outputs, conduct rather than result." *Id.* The "right question" to ask in this inquiry is "not whether the claim itself was frivolous or nonfrivolous, but whether [the attorney] conducted an adequate inquiry into the facts and the law before he filed the claim." *In re Excello Press, Inc.*, 967 F.2d at 1112. For routine legal services, such as those supposedly provided here by Mr. Gibson, exhaustive research before commencing an action or handling a related matter in the course of a bankruptcy is neither required nor practicable. *In re TCI, Ltd.*, 769 F.2d 441, 447 (7th Cir.1985). Indeed, lawyers who specialize in chapter 13 cases may often face special problems, such as getting timely information from an unsophisticated client and relying heavily on non-lawyer paralegals for much of the routine clerical and fact-finding work. *See, e.g.*, Keith M. Lundin, 1 *Chapter 13 Bankruptcy*, §§ 1.86, 1.87 (2nd ed. 1994).

Still, the issue is not, as Mr. Gibson's testimony and brief imply, whether the debtor fell out of touch, which (according to Mr. Gibson) necessitated drastic measures on Mr. Gibson's part to salvage the potentiality of a plan for his client. Mr. Gibson's motives—and his (largely incredible) protestations of zealous representation on behalf of his client—are irrelevant to this inquiry. Rather, the issue is whether Mr. Gibson conducted a reasonable investigation into the law and facts before concluding that he had enough information on September 20, 1995, to justify objecting to dismissal.

Mr. Gibson, himself, conducted virtually no factual inquiry during the course of this bankruptcy. The debtor had not contacted Mr. Gibson's office between June 22, 1995, and September 19, 1995. Mr. Gibson, or more accurately, his assistant Mr. Rohmeyer, lacked information he deemed necessary for completing and filing the schedules and the chapter 13 plan. Even after his meeting with the debtor on September 20, Mr. Rohmeyer lacked the necessary information. As to the law, Mr. Gibson suggested in his testimony that he believed that if he could represent at the hearing scheduled on his objection that a plan might thereafter be proposed within a reasonable time, the case would not be dismissed. He has pointed the court to no law that would support this peculiar optimism. In fact, the law is remarkably clear. Schedules and a plan must be filed within 15 days after the filing of a chapter 13 case unless a later time is approved by the court.[1] Failure to timely file schedules and a plan are each grounds for dismissal.[2] To suggest

---

1. 11 U.S.C. § 1321 states simply: "The debtor shall file a plan." FRBP 3015(b) provides in relevant part: "The debtor may file a chapter 13 plan with the petition. If a plan is not filed with the petition, it shall be filed within 15 days thereafter, and such time may not be further extended except for cause shown and on notice as the court may direct."

2. 11 U.S.C. § 1307(c) provides in relevant part: "Except as provided in subsection (e) [covering family farmers] of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this

chapter, whichever is in the best interests of creditors and the estate, for cause, including ... (3) failure to file a plan timely under section 1321 of this title.... (9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; or (10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521."

11 U.S.C. § 521 provides in relevant part: "The debtor shall—(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current in-

that an indeterminate date after October 2, 1995 would be substituted for August 24, 1995, without so much as a motion to extend the time, defies both reason and experience. While prompt correction of small omissions or problems often causes the chapter 13 trustee to withdraw a filed motion to dismiss, no evidence was presented and no memory of the court supports the apparent belief that statutory deadlines will be waived on the vague promise of future performance by a debtor, who failed to appear when ordered at a meeting of creditors, or by her counsel, who has a long history of careless practice and overly optimistic projections before this court.

The existence of an improper purpose for filing is the second point of inquiry under Rule 9011, which sanctions the filing of documents for *inter alia* delay or harassment. As with the reasonable inquiry standard, a showing of subjective bad faith is not required because a document's "purpose" can be evaluated objectively. *Brown v. Federation of State Medical Boards of the United States,* 830 F.2d 1429, 1436 (7th Cir.1987) (evaluating the standard under Rule 11), *abrogated on other grounds, Mars Steel Corp. v. Continental Bank, N.A.,* 880 F.2d 928, 933 (7th Cir.1989) (en banc). That is, if the filed document does, in fact, lead to needless delay or cost or is in some other way "improper," it violates Rule 9011 regardless of the attorney's subjective belief in the need to file the document.

Why was the objection filed in this case? Mr. Gibson claims that it was to permit the filing of a plan, yet Mr. Gibson lacked sufficient information on September 20 to draft a plan. Nor could he reasonably expect to gather that information promptly thereafter. In fact, a plan appeared to be no closer to completion on October 24, 1995, the date of Mr. Gibson's show cause hearing, than on the day the objection was filed. (In a strange exercise of futility and in clear defiance of the terms under which jurisdiction over this dispute was retained after the case was dismissed on October 2, 1995, a plan was filed on November 3, 1995, followed by documents in support of that filing, and an amended plan was filed on November 22, 1995.)

As the trustee has noted, on September 20, 1995, "[t]here was no reasonable expectation that a confirmable plan could be proposed." By filing the objection, the dismissal was delayed, the trustee was compelled to prepare for and attend a hearing before the court on the motion to dismiss,[3] and the stay imposed on creditors by 11 U.S.C. § 362(a) was extended.[4] These results were all foreseeable, and presumably anticipated by Mr. Gibson. The objection was filed solely to keep the case open and to prolong the restraint on Ms. Slaughter's creditors. As Judge Easterbrook noted in *Mars Steel Corp.,* "As in tort law, the event sometimes speaks for itself. That is, Rule 11 no less than common law recognizes the doctrine of res ipsa loquitur." *Mars Steel Corp.,* 880

come and current expenditures, and a statement of the debtor's financial affairs...."

**3.** 11 U.S.C. § 1302 establishes that the chapter 13 trustee's duties to the court and debtor are both mandatory and substantial. Section 1302(b) states:

The trustee shall—

(1) perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), 704(7), and 704(9) of this title;

(2) appear and be heard at any hearing that concerns—

(A) the value of property subject to a lien;

(B) confirmation of a plan; or

(C) modification of the plan after confirmation.

. . . . .

(4) advise, other than on legal matters, and assist the debtor in performance under the plan.

Thus, not only are the trustee's duties under § 704 relating to "information, accountability, investigation, objection to claims and objection to discharge," *In re Andrews,* 49 F.3d 1404, 1408 (9th Cir.1995), incorporated into chapter 13 through § 1302, but the trustee is further required to prepare for, appear at, and participate in virtually all of the significant hearings that occur prior to (and not infrequently after), confirmation of a chapter 13, as well as advise and assist the debtor in performance of the plan.

**4.** 11 U.S.C. § 362(c)(2)(B) terminates the stay in a case under chapter 13 at the earliest of "(A) the time the case is closed; [or] (B) the time the case is dismissed."

F.2d at 932. The action taken by Mr. Gibson on September 20, 1995, in the context of the history of his representation of the debtor in this case, speaks for itself.

Mr. Gibson's actions violate both standards under Rule 9011 and sanctions are mandatory. *See, e.g., In re Generes,* 69 F.3d 821, 827 (7th Cir.1995) (remanding for mandatory sanctions under a violation of pre–1993 Rule 11, upon which Rule 9011 is based). Due process must be extended before sanctions are imposed, but at least with respect to a lawyer, Rule 9011 itself should constitute sufficient notice of the possibility that sanctions will be imposed under either the reasonable inquiry or improper purpose analyses for filing a frivolous objection. *See, e.g., Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 205–06 (7th Cir.1985) (upholding sanctions imposed without a hearing on an attorney who filed "frivolous" and "worthless" claims without proper inquiry);[5] *cf. Donaldson v. Clark,* 819 F.2d 1551, 1560 (11th Cir. 1987) (due process requires that a court give a non-attorney more specific notice than an attorney would require before Rule 11 sanctions are imposed). In any event, Mr. Gibson was allowed to present a complete defense at an evidentiary hearing, after which he was invited to submit legal memoranda. *See, e.g., In re Kunstler,* 914 F.2d 505, 522 (4th Cir.1990) (due process satisfied by the opportunity to present evidence and legal arguments in response to Rule 9011 charges).

■ The nature and amount of sanctions are left to the court's discretion. FRBP 9011(a). Sanctions must be reasonable and no more than is necessary to serve Rule 9011's purpose, *Brown v. State Medical Boards,* 830 F.2d at 1437, and should not "reward" the wronged party. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991). The sanction should accomplish the twin goals of providing "specific and general deterrence," *Cooter & Gell,* 496 U.S. at 404, 110 S.Ct. at 2460, aimed both to punish the wrongdoer and send a message to the bar that such conduct will not be tolerated. This circuit has consistently held that the Rule 11 benchmark is a form of restitution: "Sanctions under Rule 11 frequently are designed to make the adverse party whole—to put the party opposing the motion in as good a position as it would have occupied had the motion never been made." *Mars Steel Corp.,* 880 F.2d at 939; *see also Brandt v. Schal Associates, Inc.,* 960 F.2d 640, 646 (7th Cir.1992) ("Compensation and deterrence ... are sometimes compatible."). Restitution in this case would require that Mr. Gibson make the trustee whole for the value of the additional time the trustee's office has expended on this case as a result of the Rule 9011 violation.[6] (Note that, because the debtor applied to pay the filing fee in installments and thereafter made no payments whatsoever,[7] neither the court nor the trustee has had a source of reimbursement for expenses of administration.) Compensation is just a starting point. For specific and general deterrence, sanctions in this case could include a penal fine, payable to this court, a public reprimand, and referral to the state bar for possible disciplinary action. *See, e.g., In re Jerrels,* 133 B.R. 161, 165 (Bkrtcy.M.D.Fla.1991) (imposing costs, a fine, referral to the state bar griev-

5. *Rodgers* contains language suggesting that sanctions based on "bad faith" require a hearing before imposition. *Rodgers,* 771 F.2d at 206; *see also Brown v. Nat'l Bd. of Medical Examiners,* 800 F.2d 168, 173 (7th Cir.1986) (citing *Rodgers* ). Neither decision explains what is meant by "bad faith," but presumably the decisions refer only to the colorable bad faith required by the pre–1983 version of Rule 11. *Rodgers* relies on *Textor v. Board of Regents of Northern Illinois University,* 711 F.2d 1387, 1395 (7th Cir.1983), which determined that a sanction based on *subjective* bad faith under the pre–1983 Rule 11 standard at issue in *Textor* required notice and a hearing before imposition.

6. The amount may be incalculable and uncompensable under Rule 9011, but the creditors stayed by this delay in dismissal may also have suffered a loss. *Business Guides,* 498 U.S. at 553–54, 111 S.Ct. at 934–35 (only legal fees and expenses directly related to litigation of the sanctionable violation and not consequential damages are compensable under Rule 11).

7. Section 1326(a)(1) requires payments to be made within 30 days after a plan is filed. Whether the delay in filing the plan in this case demonstrated a design to stay creditors "for free" is not developed in this decision, but cannot be totally ignored.

ance committee, and a published opinion as appropriate sanctions for a bad faith filing). All of these alternatives are attractive on the facts of this case.

Calculating monetary sanctions in this case requires an inventory of the unnecessary activity created by Mr. Gibson's groundless objection. The standing chapter 13 trustee was required to prepare for and attend the October 2, 1995, hearing. The futile filings made by Mr. Gibson on behalf of Ms. Slaughter after the case was dismissed required both the trustee and the court to do further unnecessary work. Finally, the costs, expenses, and reasonable fees incurred by the trustee in preparing for and appearing at the show cause hearing and in preparing post-hearing submissions may be assessed against Mr. Gibson. *See Brandt v. Schal Associates,* 960 F.2d at 650–52 (construing the "make whole" remedy broadly and upholding inclusion of the fees and costs of the Rule 11 proceedings as part of the sanction against the offending party); *Cooter & Gell,* 496 U.S. at 406–07, 110 S.Ct. at 2461–62 (authorizing the inclusion of all Rule 11 expenses incurred at the trial level by the wronged parties).

Penal fines for Rule 9011 cases are neither extraordinary nor unsupported by law; typical amounts range up to $1,000, payable to the clerk of court. *See, e.g., In re Memorial Estates Incorporated,* 950 F.2d 1364, 1370 (7th Cir.1991) (upholding a $1,000 penal fine against an attorney for violating Rule 9011 by filing an improper motion); *Midlantic National Bank v. Kouterick (In re Kouterick),* 167 B.R. 353, 367 (Bkrtcy.D.N.J.1994) (imposing a $1,000 "deterrence" fine on an attorney who filed a brief containing factual misrepresentations); *In re Jerrels,* 133 B.R. 161, 165 (Bkrtcy.M.D.Fla.1991) (imposing $500 fine on attorney for failing to conduct reasonable inquiry into the debtors' situation before filing documents). In this case, a penal fine would serve principally to deter this sort of practice by Mr. Gibson. His casual disregard for the law is a significant departure from the care and professionalism generally shown by the bankruptcy bar of

this district. A fine payable to the court would offset some of the cost of the additional and unnecessary work performed by the court and the clerk's office. *See, e.g., In re Frenz,* 142 B.R. 611 (Bkrtcy.D.Conn.1992) (bankruptcy court entitled to $500 as compensation for time expended in responding to debtor's improper conduct).

In calculating a penal sanction, the principles of punitive damages apply. I must consider mitigating factors, including actions taken by Mr. Gibson to ameliorate the sanctionable conduct and his ability to pay. *See, e.g., In re Braun,* 152 B.R. 466, 473 (N.D.Ohio 1993); *Brandt v. Schal Associates,* 960 F.2d at 652. So far, the actions taken by Mr. Gibson have not ameliorated the damage his conduct of this case has caused. He has continued to file bankruptcy documents on behalf of Ms. Slaughter although her case was dismissed, and the legal memoranda he has filed in opposition to sanctions wasted the court's time. Mr. Gibson has not presented any argument or evidence in mitigation, although a review of the case law would alert him to the fact that courts consider the issue.

Mr. Gibson has suggested in response to another order to show cause under Rule 9011 that he would be unable to pay monetary sanctions if imposed. I am aware that Mr. Gibson has filed several chapter 13 cases in which he is a debtor. (Those cases have been routinely assigned to another judge and I am not aware of their present status.) However, the need to protect the public by deterring sanctionable conduct cannot be forced to await the malefactor's attention to his personal budgeting. In *Brandt v. Schal Associates,* the court upheld the imposition of a $443,564.66 sanction by the district court [8] against an attorney who was driven into bankruptcy by the sanction. While noting that "sanctions should not be used to cause an attorney's financial ruin," *id.* at 652, the *Brandt* court nevertheless upheld the sanction on the grounds that the attorney waived the argument by failing to raise it before the

---

8. The sanction included "reasonable" fees and costs incurred by the wronged party, including those incurred because of the Rule 11 matter and the costs of "delay" caused by the Rule 11 matter

and the improper filings that led to the Rule 11 sanction. *Brandt v. Schal,* 131 F.R.D. 485 (N.D.Ill.1990) and 131 F.R.D. 512 (N.D.Ill.1990).

district court in the initial Rule 11 hearings. In any event, nothing in *Brandt* or the other decisions cited herein suggests that the attorney's likely inability to pay should deter a court from imposing a sanction consistent with the violation.[9]

Since Mr. Gibson filed the objection, the trustee's office has incurred costs of service in this case in excess of what would have been incurred if the dismissal had gone uncontested amounting to more than $600.[10] That sum shall be ordered to be paid to Mr. Chatterton as appropriate restitution. However, that alone does not provide the level of deterrence which the sanctioned conduct requires. For that, an additional sum of $400 shall be ordered to be paid to the U.S. Bankruptcy Court as a penal fine. As a further sanction, this opinion will be submitted for publication to serve as a public reprimand and this court's file will be referred to the State Bar of Wisconsin for possible disciplinary action.

Three additional issues must be addressed. First, Mr. Gibson, in a brief filed in response to the order to show cause, argues that the chapter 13 trustee did not have standing to bring the motion to dismiss in the first place.[11] Second, Mr. Gibson argues that his objection to dismissal could have, and therefore should have, been construed as a motion for extension of time pursuant to FRBP 3015. Both of Mr. Gibson's legal arguments are poorly made, unsubstantiated by the law and the facts of this case, and at best lightly researched. Proper research would have shown Mr. Gibson that his positions are unsupported by any *relevant* case law (the cases he cites are, at best, tangentially related to his legal arguments) or by the one commentator he cites. Because "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point," *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990), I will deal with these arguments with little analysis. Finally, the evidence suggests that Mr. Gibson facilitated the practice of law by a non-lawyer.

■ The Chapter 13 Trustee's Standing. Mr. Gibson contends that 11 U.S.C. § 1307 confers no authority on the chapter 13 trustee to bring a motion to dismiss for failure to file a plan. He cites § 1307(c)(9) as giving only the U.S. trustee the authority to move for dismissal after fifteen days of filing, where the debtor has not filed a list of creditors, a statement of financial affairs, and the other schedules required by 11 U.S.C. § 521(1). By focusing on the specific requirements of § 1307(c)(9), however, Mr. Gibson misses the point. The chapter 13 trustee in this case moved to dismiss on September 1, 1995, twenty-two days after the petition was filed, not just for the failure to file schedules, lists, and disclosure statements but because of the "failure to file a *plan* timely under section 1321" of the Code. 11 U.S.C. § 1307(c)(3) (emphasis added). As Mr. Gibson's brief concedes, when the issue is the failure to file a plan, any "party in interest" can move to dismiss. 11 U.S.C. § 1307(c). "Party in interest" under the Code is widely understood by judges, practitioners, and commentators to include the standing trustee even though there is no specific definition for party in interest in chapter 13, as there is in chapter 11. *See, e.g., In re Andrews*, 49 F.3d 1404 (9th Cir. 1995) (discussing generally the chapter 13 trustee's standing, duties, and status as a "party in interest"); *see also* 11 U.S.C.

---

9. The malpractice insurance for the attorney sanctioned in *Brandt* did not cover Rule 11 violations, suggesting that the wronged parties would receive little, if any, of the $443,564.56 imposed. *Brandt v. Schal Associates*, 960 F.2d at 652 n. 4.

10. With Mr. Gibson's consent given on November 30, 1995, Mr. Chatterton has supplemented the record in this matter with an exhibit itemizing charges his office incurred during the Slaughter case, through the filing of a brief on November 9, 1995. From that exhibit, I have calculated those charges incurred after September 20, 1995, and estimated the cost of preparing the exhibit and closing the case.

11. Mr. Gibson later filed a second brief which attacked the trustee's assessment of the inviability of the "plan" filed for Ms. Slaughter and, as well, purported to present further legal arguments in opposition to sanctions. The quality of the second brief matched the first, and requires no further comment.

§ 1109(b) (including "trustee" in a definition of "party in interest" in chapter 11), cf. FRBP 2002(1), 11 U.S.C. § 323 (language includes "trustee" as a party in interest); *accord* Ginsberg & Martin, 2 *Bankruptcy: Text, Statutes, Rules,* § 15.07(c) at n. 672 (3rd ed. 1993) ("Although [§ 1307(c) ] does not specifically mention the trustee, but merely refers to parties in interest as having the right to seek an involuntary conversion or dismissal, the trustee is clearly a party in interest for this purpose."); Keith M. Lundin, 3 *Chapter 13 Bankruptcy* § 8.11 (2d ed. 1994) (" 'Party in interest' in § 1307(c) probably includes creditors and the chapter 13 trustee . . .").

■■ Construing the Objection as a Rule 3015 Motion. Mr. Gibson also argues that his objection to dismissal should have been liberally construed as a motion for extension of time to file under Rule 3015(b). The entire text of the objection is: "The debtor, by Attorney John W. Gibson, object (sic) to the chapter 13 trustee's motion to dismiss and requests that a hearing be scheduled." Nothing in the language of the objection suggests in any way that an extension of time is sought. Nor were any other papers filed prior to the hearing on the objection that would provide any clue as to any relief sought by or the basis for the objection. Finally, nothing said by Mr. Gibson at the hearing was phrased as a request to extend the past deadline, nor was any cause stated which would support an extension had one been sought.

Facilitating the Unauthorized Practice of Law. Practicing law without a license is a violation of Wisconsin law. Wis.Stat. § 757.30. I question whether Mr. Rohmeyer, who appears to have made *legal* determinations on behalf of the debtor in this case, was practicing law without a license. (That was not the issue being heard on October 24, but the question arose as the testimony of Mr. Gibson was being given.) Still, Mr. Rohmeyer's actions appear to be relatively innocent. Mr. Gibson's actions, in placing the burden of acting in a legal capacity on Mr. Rohmeyer, are not so innocent. Mr. Gibson's testimony suggests that the type of decision made by Mr. Rohmeyer, to file an emergency petition, was not unique to this case. If Mr. Rohmeyer's actions constitute the unauthorized practice of law, then Mr. Gibson violated Wisconsin Supreme Court Rule 20:5.5(b) (1988), which forbids an attorney from "assist[ing] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

Mr. Gibson, in essence, abdicated his "duties, responsibilities, and judgment as an attorney to non-attorney personnel." *In re Martin,* 97 B.R. 1013, 1020 (Bkrtcy.N.D.Ga. 1989). *In re Martin* concerned a Georgia-based personal bankruptcy attorney who allowed his paralegal to prepare and file petitions with little, if any, input from the attorney. The court stated that the Georgia attorney's actions provided additional evidence that the attorney violated Rule 9011 by conducting a less than reasonable inquiry into the law and facts before filing court documents, in addition to violating the Georgia professional responsibility code. A distinguishing element from the case at bar is that the Georgia attorney allowed his paralegal to forge his signature on court documents; here, of course, Mr. Gibson merely left pre-signed documents with Mr. Rohmeyer. Since Mr. Rohmeyer, not Mr. Gibson, made the decision to file, however, that may be a distinction without a difference.

One final matter compels discussion. This decision turns, in some respects, on the facts I have found, and those findings turn on my assessment of the credibility of Mr. Gibson's testimony. That testimony consisted of uncertain recollections, lengthy obfuscations, reactive rationalizations, unresponsive equivocations, and lame excuses. I had many reasons to doubt both the memory and the veracity of Mr. Gibson as a witness. His demeanor suggested that many answers were contrived. He offered no corroboration through records or other witnesses. In short, I found most of his testimony to be incredible and the rest immaterial, and have not incorporated those parts in this opinion.

Sanctions may be ordered consistent with this opinion which stands as my findings of fact and conclusions of law in this matter.

**ORDER:**

The court having entered on this day its opinion in the above-entitled matter;

IT IS HEREBY ORDERED that a copy of the opinion and order issued in this case and an offer of the entire file in this case be sent to the Board of Attorneys Professional Responsibility, Room 410, 110 E. Main St., Madison WI 53703, for consideration of possible disciplinary action.

IT IS FURTHER ORDERED that John W. Gibson pay to the office of the chapter 13 trustee, William A. Chatterton, the sum of $600.00 (six hundred and 0/100 dollars) as reimbursement for the reasonable costs and fees incurred by the trustee due to Mr. Gibson's sanctionable conduct in this case. Payment shall be made within twenty (20) days of entry of this order.

IT IS FURTHER ORDERED that John W. Gibson pay to the Clerk of the Bankruptcy Court, Western District of Wisconsin, the sum of $400.00 (four hundred and 0/100 dollars) as a penalty for the costs incurred by this court due to Mr. Gibson's sanctionable conduct in this case. Payment shall be made within twenty (20) days of entry of this order.

IT IS FURTHER ORDERED that John W. Gibson file with this court, with a copy to the court in chambers, an affidavit of compliance with the orders to pay the trustee and the Clerk of the Bankruptcy Court. The affidavit and chambers copy shall be filed within twenty (20) days of entry of this order.